## HARPER and wife *against* PHELPS and wife.

The testator gave to each of his brothers and his sister 10,000 dollars; to
each of his nephews and nieces, of whom there were thirty-five, 5,000
dollars; and to each of his nephews and nieces in the second degree, of
whom there were one hundred and twelve, 1,000 dollars.  He then devised to
*C,* a favourite niece living with him, at the making of the will, and continu-
ing with him until his death, a dwelling-house in the city of *New-Haven,* to
be furnished from his estate, in a manner suitable for her family's use; and
an annuity of 2,000 dollars, from a trust fund created by the will, during
her life, for the support of herself, and of her nephews and nieces, whom
she had then under her care, and of such other persons as she, from time
to time, might wish and request to be members of her family.  *M,* one
of the testator's nieces in the second degree, who had spent some time in
his family, during his life-time, and received aid from him in support
and tuition, being afterwards in feeble health and destitute condition,
though not under *C's* care, nor a member of her family, brought a bill in
chancery against *C,* to obtain from her a portion of such annuity.  Held,
that the disposition of the annuity was left, by the will, entirely to the
*discretion* of *C,* which it was not within the power of a court of equity
to controul; consequently, the bill should be dismissed.
It is a well established principle of equity, that to raise a trust, it must be
ascertained what proportion each beneficiary is to take.

*New-Haven,*
*July, 1851.*

Harper & ux.
*v.*
Phelps & ux.

Nor will a court of equity raise a trust from expressions importing recommendation, hope, confidence, desire, &c., where the objects of the trust are not certain and definite; or where the property, which is to be the subject of the trust, is not certain and definite; or where a clear choice to act, or not to act, is given; or where the prior dispositions import an absolute and uncontroulable ownership.

THIS was a bill in chancery, seeking a reasonable proportion of the sum of 2,000 dollars, being the annual income of a fund devised by *Samuel St. John* for the benefit of his niece, *Catharine S. St. John,* one of the defendants.

The material facts in the case appear in the report of the committee appointed by the court to ascertain them. By that report, the following facts are found. On the 12th day of *September,* 1844, *Samuel St. John* of *New-Haven* made and published his last will and testament, containing the following provisions. After directing the payment of his debts and funeral expenses, he disposed of all the residue of his estate as expressed in the subsequent articles. To each of his brothers, and his sister, living at the time of his death, ten thousand dollars. To each of his nephews and nieces, then living, five thousand dollars. To each of his nephews and nieces in the second degree, then living, one thousand dollars. The principal of these sums he devised and bequeathed to *Isaac H. Townsend* and *Stephen D. Pardee,* and the survivor of them, upon the trusts and for the purposes therein specified. The thirteenth and fourteenth articles of the will were as follows:

" *Thirteenth.* In consideration of the kindness and attention of my niece, *Catharine S. St. John,* I give and devise to her, in fee simple and forever, the land and dwelling-house in the city of *New-Haven,* known as *Number One, St. John Place:* and I direct my executors to furnish the said dwelling-house with appropriate furniture, and in all respects, in a suitable and proper manner, at the expense of my estate; and I give and bequeath to my said niece, absolutely and forever, the furniture and other articles with which the said dwelling-house shall be furnished, pursuant to the above direction.

*Fourteenth.* All the rest, residue and remainder of my estate I give, devise and bequeath to *Isaac H. Townsend* and *Stephen D. Pardee,* and the survivor of them, as joint

tenants, in fee simple and forever, upon the trusts and for <span>New-Haven, July, 1851.</span> the purposes following—that is to say :

<span>Harper & ux. v. Phelps & ux.</span> Upon trust, to hold the same as a *trust fund*, and to manage the same as they shall deem expedient, and to receive and collect, from time to time, the income, interest and profits of the same, and the avails thereof; and of the nett proceeds of the said income, interest and profits, to pay the sum of two thousand dollars, to my niece, *Catharine S. St. John*, annually, during her natural life ; and in the same proportion for the part of the year which may have elapsed at the time of her death; for the support of herself, and of her nephews and nieces whom she has now under her care, and of such other persons as she, from time to time, may wish and request to be members of her family ; and the balance of the said nett proceeds to add, from time to time, to the principal of the trust fund under this article of this will, as part of the same."

*Isaac H. Townsend* and *Stephen D. Pardee* were appointed executors.

The testator died, at *New-Haven*, on the 4th day of *November*, 1844, leaving real and personal estate of more than four hundred thousand dollars in value.   The will was duly proved ; the executors and trustees named therein, accepted the trusts, took possession of the estate and proceeded therein according to law.   *I. H. Townsend*, one of the trustees, has since died, and *S. D. Pardee* is the survivor, on whom the duties under the will devolve.   As surviving trustee, he now holds, for the uses and purposes mentioned in the 14th article of the will, real and personal estate of the testator, amounting in value to not less than seventy thousand dollars ; the average nett annual income from which, since the death of the testator, has been three thousand dollars.   The nett income from the same, at the end of the first year from the decease of the testator, was sixteen hundred and seventy dollars ; and at the end of the current year, it will be not less than thirty-five hundred dollars.

Mrs. *Catharine S. Phelps*, who is the person named *Catharine S. St. John* in the fourteenth article, at the decease of the testator, and for many years previous thereto, lived and resided with him, and had the superintendence, care and management of his household.   *Mary Jane Harper,*

*New-Haven,*
*July, 1851.*

*Harper & ux.*
*v.*
*Phelps & ux.*

and *Lucinda Amelia Baldwin*, are her nieces, and nieces in the second degree of the testator. *Lucinda Amelia* entered the family of the testator, and resided as an inmate thereof, from the month of *December*, 1842, and was so residing therein, at the time of making the will, and at the time of the decease of the testator ; and was, during all that time, under the care of the said *Catharine*, and received her maintenance and support from the voluntary bestowments of the testator.

*Mary Jane Harper*, at the age of sixteen, came, uninvited, and commenced residing, as an inmate in the family of the testator, in the month of *August*, 1842, and so continued to reside until the first of *January*, 1844, attending the school of Miss *Seeley*, as a day scholar, and receiving, during all that time, her entire maintenance and support from the voluntary bestowments of the testator, which were furnished by said *Catharine*. From the first of *January*, 1844, until after the death of the testator, she received her board, and resided in the family of Miss *Seeley*, and continued a pupil of her school, under the direction of the testator, to qualify her to become a teacher ; having her expenses of clothing and tuition paid by the testator, and furnished by said *Catharine*, exclusive of any expenses for board, except that from *January*, 1844, to *April*, 1844, her board was paid by the testator. During this period, from *January*, 1844, to the death of the testator, she frequently visited the house and family of the testator, called it her home, asked permission from him relative to her amusements, and took direction from him as to the employment of her time, while she was so boarding and residing in the house of Miss *Seeley*. At the time of the decease of the testator, she was of the age of eighteen years ; and *Lucinda Amelia* of the age of sixteen years. They were then destitute of any means of support, and were especial objects of his affection and bounty, so far as it appears by the facts herein found.

The trust fund continues to be held by *Stephen D. Pardee*, the survivor of the trustees, for the purposes mentioned in the fourteenth section of the will, who has received and collected, from time to time, the income, interest and profits thereof, and from the nett proceeds thereof, has, ever since the death of the testator, paid over to said *Catharine*, the said sum of

two thousand dollars, annually, except the first year after the death of the testator, when the proceeds thereof amounted only to the sum of sixteen hundred and seventy dollars, which was duly paid to said *Catharine ;* and which has been paid annually, under and pursuant to, and for the purposes mentioned in, the fourteenth article of the will ; and the surviving trustee expects and intends to pay said sum of two thousand dollars, annually, during the life of said *Catharine.*

*New-Haven,*
July, 1851.
—————————
Harper & ux.
*v.*
Phelps & ux.

Since the 9th day of *July,* 1847, when *Mary Jane* arrived at the age of twenty-one years, said *Catharine S. Phelps,* has refused to pay her any part of said sum of two thousand dollars, or to contribute, in any form, from said fund towards her support.

*William A. St. John,* and *George S. St. John* are the nephews of said *Catharine S.,* and nephews in the second degree of the testator, and were minors under the age of twenty-one years, at his death : they each received, annually, some pecuniary aid from the testator, before his death ; but they never resided in the family of said *Catharine S.,* or of the testator, but occasionally, during the last year of the testator's life, received remittances from him of money and stationery, to aid in their support and education.

In the month of *May,* 1845, said *Catharine S.,* upon the application of her brother, *Benjamin St. John,* the father of the nephews and nieces above named, for the sake of peace, and with a view, on her part, to compromise an unpleasant family difference arising from the claims of these nephews and nieces, denying her liability to contribute to them, or either of them, any part of said fund, entered into an agreement in writing, by which she agreed to allow them, while they should respectively be under the age of twenty-one years, as follows, *viz.,* to each of her nieces, 15 *per cent.* and to each of her nephews 5 *per cent.* annually, of the 2,000 dollars, or any part thereof which she should be entitled to receive.

Ever since the execution of this agreement, she has faithfully paid the sums therein stipulated to be paid.

On or about the 17th day of *March,* 1848, *Mary Jane* requested of said *Catharine,* a continuance of 15 *per cent.* of the income of said fund ; she, *Mary Jane,* being, at the time, in feeble health and in a destitute condition.

The said *Catharine S.*, resided with the testator, most of the time for several years before 1836 ; and in that year, she commenced living with him permanently, accompanying him in all his journeys and visits, and never thereafter, till his death, was separated from him. She went with him, in the autumn of 1836, through the *Southern* states to *New-Orleans*, the journey having been undertaken on account of his health, and returned *North* the following season. The testator had a disease in one of his eyes, which required careful attention and dressing, from once to three times a day ; and she having received instructions from an occulist in *New-York*, was able to attend, and did attend, personally, to the same, from that period until his death. She had charge of the testator's household and domestic affairs, during all that time, taking the principal management of the same, in making purchases and paying bills, and assisting him, in much of his other business, by keeping his accounts, and doing a large portion of his writing, under his directions and advice.

The plaintiffs, *Mary Jane* and *William R. Harper*, intermarried, in the year 1848, and have ever since their intermarriage, resided in the state of *New-York*, where they now reside; and said *Catharine S.*, has resided, ever since the death of the testator, in the state of *Connecticut*, where she now resides.

Previous to the making of the agreement of *May*, 1845, she made some arrangements preparatory for house-keeping, in the house devised to her by the testator, which was to be furnished with furniture, as provided for in the will ; but in consequence of ill health, which has ever since continued, she has not been able to complete her arrangements for housekeeping, or take the the charge or management of the same, and has not kept house since the death of the testator.

At the time of making the will, and from that time to the death of the testator, there were no other nephews and nieces of said *Catharine S.*, whom she had under care, than said children of her brother, *Benjamin St. John*; and these nephews and nieces were then under her care only as is above stated.

At the time of the death of the testator, he left, surviving him, three brothers and one sister ; thirty-five nephews and

nieces ; and one hundred and twelve nephews ánd nieces in the second degree.

The case was reserved for the advice of this court as to what decree should be passed.

*Kimberly* and *C. A. Ingersoll*, for the plaintiffs, contended, 1. That the plaintiff, *Mary Jane Harper*, one of the nieces of the defendant, *Catharine S. St. John*, is one of those designated in the 14th article of the will of the testator, as " *her nephews and nieces whom she has now under her care.*" First, there were no other nephews and nieces of the defendant then under her care, than the children of *Benjamin St. John*, one of whom is the plaintiff. Secondly, the children of *Benjamin St. John*, were all, more or less, the peculiar objects of the testator's regard, during his life. They were all, more or less, assisted by him ; the two daughters had, for more than two years, resided under his roof, and had been members of his family ; one of them was then actually residing in his house, and the other was by him supported at a boarding school, and receiving her education under his directions, while she continued to come and go at her pleasure, treating his home as her home, and receiving his advice and direction as to the employment of her time. And during all this time, the defendant was the house-keeper and stewardess of the testator ; having the superintendence, care and direction of his family and affairs, and, with the money of the testator, actually furnishing the plaintiff with clothes and tuition. Thirdly, the plaintiff and her sister were poor and destitute of the means of support, and were the especial objects of the testator's bounty, so far as appears by the facts found.

2. That the plaintiff had, at the decease of the testator, an absolute interest in the fund, provided and holden upon trust, under the 14th article of the will, not dependant upon the mere will and caprice of the defendant. In the first place, the court will look through all the provisions of the will, for the purpose of ascertaining what was the *intent* of the testator ; and that *intent,* when discovered, is to govern, in giving a construction to each and every provision of the will. *Ram*, 31. 64. Secondly, it is apparent, that the testator did not intend the 2,000 dollars annuity provided by the

14th section, for the sole and exclusive use of the defendant, or to be subject to her arbitrary pleasure. He appears to have designed, that all his relations in the same degree of consanguinity, should share equally in his bounty ; with certain exceptions indeed, for which he has assigned his reasons. The defendant shares equally with the other nieces and nephews of the testator, in the provision made in a previous article of the will; and by another article, the testator has made a liberal special provision for the defendant, " *in consideration of her kindness and attention to him.*" Now, it is difficult to understand why the separate provision, by a distinct article, should have been made, if it was designed solely for her separate use.

3. That the defendant, then, does not take the 2,000 dollars annuity, as her own estate, but as *trustee* in part for the use of these nephews and nieces. This appears further from the express terms of the 14th article *"for the support of herself and of her nephews and nieces now under her care.*" It is also in accordance with the general rule, that where one gives property to another for the use of a third, a *trust* is created in favour of such third person, unless it is clearly expressed that the trustee shall have an option to defeat it. *Inglis* v. *Sailor's Snug Harbour,* **3** *Peters,* 119. per *Thompson,* J. *Jubber* v. *Jubber,* 9 *Sim.* 503. *Pushman* v. *Filliter,* 3 *Ves.* 7. The continuance of the trust is not limited to the minority of the *cestui que trust,* or to the time of her intermarriage. No such limitation is expressed or alluded to, in the will ; but, on the contrary, it is limited, by express terms, to the *life of the trustee.*

4. That each of the four children of *Benjamin St. John* is entitled to one-fifth of the fund, so long as the trustee shall not choose to have other nephews and nieces members of her family. Of course, the plaintiff is entitled to that proportion, from the time she became of age till this time, and for the future, until there shall be some change in the relation of the parties to each other.

*R. I. Ingersoll* and *Baldwin,* for the defendants, contended, 1. That the terms of the will import absolute ownership of the 2,000 dollars annuity, in Miss *Catharine S. St. John,* now Mrs. *Phelps,* whenever the trustees pay the money to

her.    It is given to *her*, for *her* life ; payable to *her*, and to *New-Haven*, July, 1851. no one else.    *Her* receipt, by the 8th article of the will, is Harper & ux. *v,* Phelps & ux, made an effectual discharge, " for *all money* which shall be paid to her ;" and the whole is left to *her* discretion, in the expenditure.

Had the testator intended to create a trust for nephews and nieces under her care, and for such other persons as she might from time to time invite to her house, he would have made it similar to the other trusts of the will, and empowered his selected trustees, *Townsend* and *Pardee*, to execute it.    Looking through the whole will, it would seem to be manifestly a harsh and strained construction, to say, that he intended, by this provision for his niece Mrs. *Phelps*, to make her the sub-trustee, of the general trustees.    Nor is it to be supposed, in an instrument where every thing else is so plainly written, that he would have failed to say, that such was his intention, had he designed to create this peculiar trust upon a trust, that is contended for here.

The language of the testator, whatever else may be said of it, imposes no *legal* obligation on Mrs. *Phelps*.    It expresses, perhaps, the motive, or cause of the gift, but does not put a condition upon it.    It is one of those cases where, to use the language of Judge *Story*, " the intention of the testator is to leave the whole subject, as a pure matter of *discretion*, to the good will and pleasure of the party enjoying his confidence and favour ; and where his expressions of desire are intended as mere moral suggestions, to excite and aid that discretion, but not absolutely to controul or govern it."    2 *Sto. Eq.* § 1069.

2. That the uncertainty of the persons intended by " nephews and nieces whom she has now under her care, and of such other persons as she from time to time may wish and request to be members of her family"—would render it nugatory as a *constructive trust*.    It never could be carried out, by any decree of a court of chancery.    In the first place, the only nephews in the second degree of the testator, mentioned in the finding of the committee, *Wm. A. St. John* and *George S. St. John*, claimed to be the nephews here referred to—never resided in the family of the devisee ; and it is not found, that they, or either of them, ever were, in any way, under her care.

But secondly, the nephews and nieces here referred to, if we suppose them to be ascertained, are placed on the same footing as all other persons whom she may, from time to time, invite to partake of her bounty, and who are not, and cannot be, ascertained. The language of the will is, "her nephews and nieces whom she has now under her care, *and* of such other persons as she, *from time to time*, may wish and request to be members of her family. Suppose four-fifths, or any other portion of the 2,000 dollars annuity, should, by a decree of the court, be put aside, for these four nephews and nieces, and Mrs. *Phelps* should to-morrow invite 10, or 20, or 50 other persons to become members of her family, would not such a decree defeat the will of the testator? If she, by the terms of the will, can expend this fund as it comes to her hands, or such portion of it as she sees fit, on *any* persons whom she may *from time to time* prefer, as well as on the nephews and nieces, it is inconsistent with the idea of a *trust*. The language is too indefinite to predicate a trust upon it. · See *Curtiss* & al. v. *Rippon* & al. 5 *Madd*. 263. (top,) 434. (side.) *Jarman*, 335. (top.) 339. (side,) and onward. 2 *Sto. Eq.* § 1069. *Knight* v. *Knight*, 3 *Beavan*, 148. *Gilbert* v. *Chapin*, 19 *Conn. R.* 342.

3. That even if the objects had been clearly enough defined, instead of being left as here to the future discretion of the devisee, in her invitations to those whom she might desire to be members of her family ; still there could be no trust, where the *portions to go to each object* are left in such absolute uncertainty.

The court say, in *Gilbert* v. *Chapin*, 19 *Conn. R.* 347. "Here, though the objects and the property are well enough defined, yet the way in which the property shall go, *how much each child shall take*, is not pointed out, but left entirely to the discretion of the testator's wife." Adopting the language of the Chief Justice, in that recent case, in giving the opinion of the court : " We think in the will before us, that there is as much of this uncertainty of description, and *of the portions which each child was to take*, and as much of discretionary power conferred upon the devisee, as was adjudged in many of the cases referred to, to be sufficient to defeat the trusts there claimed."

4. That the other parts of the will, show, that the con-

struction now attempted to be put upon the 14th article does not belong to it. The testator had already provided for the present plaintiff, Mrs. *Harper*, and all his nephews and nieces in the second degree, by the "fifth" article of the will, and named his trustees for them, Messrs. *Townsend* and *Pardee*. He had also provided a house and furniture for his niece *Catharine*, (now Mrs. *Phelps*,) and the 2,000 dollars annually given to her, was manifestly intended as a provision for supporting the establishment, as she might from time to time desire: it is made therefore to depend on her life, not on the lives of others, as it would have been, had it been intended for others independent of her.

The expression " now under her care," coupled with the other fact found, that the testator was educating Mrs. *Harper*, to enable her to become a teacher and thus support herself, is inconsistent with the idea, that she was to have a support independent of Mrs. *Phelps ;* and this too, when of age, married, and having a family of her own, separated from the family of her aunt, living in another state, and in no respect under her care.

ELLSWORTH, J. The questions in this case arise upon the construction of the 14th article of the will of *Samuel St. John*, Esq. Does this article give to Mrs. *Harper*, one of the plaintiffs, a fixed and certain portion of the 2,000 dollars annuity to *Catharine S. St. John*, now Mrs. *Phelps ;* and in case of her default in distributing it, can it be distributed by a court of chancery? Or, on the other hand, as claimed by the defendants, is the annuity given to Mrs. *Phelps*, to be expended, for her support and others in her own family, according to her wishes and pleasure?

At the first reading of this will, there is an apparent ambiguity as to the testator's meaning in the language made use of, which strikes us with some doubt and surprise, when we find, that the other parts of the will exhibit such professional accuracy and precision. But a more attentive perusal and comparison of its provisions one with another, removes all doubt; and we are quite satisfied what is the meaning of the testator, and that that meaning is clearly enough expressed, by the language used.

He first gives 10,000 dollars to each of his four brothers

*New-Haven, July, 1851.*

Harper & ux.
v.
Phelps & ux.

and sister ; then 5,000 dollars to each of his nephews and nieces, being in all thirty-five ; then 1,000 dollars to each of his nephews and nieces in the second degree, being in all, one hundred and twelve. So far, by a three-fold classification, Mr. *St. John* puts all his relatives upon a corresponding equality. He next makes an additional bequest to Mrs. *Sheffield,* (a) a favourite niece, who had once been a member of his family, of a dwelling-house in the city of *New-Haven;* and then, a like bequest to Mrs. *Phelps,* a favourite niece living with him, at the time of his death.

The house thus given to Mrs. *Phelps* is to be furnished from the estate, in a manner suitable for her family's use ; and an annuity of 2,000 dollars is given to her, to support her family, in a manner corresponding, as we believe, with what she had been accustomed to, in the family of her uncle, during his life. It is for herself likewise to say, who shall be the inmates of that family, though the article seems to assume that she will wish to continue her kindness in her family to such nephews and nieces as were then under her supervision and care. It is, we think, the clear expectation of the testator, that *Catharine* will keep an establishment in *New-Haven,* with such a family or inmates as will be agreeable to her to maintain ; for *she* is to have the annuity of 2,000 dollars for that purpose alone ; and no persons are to share in the annuity but through *her* pleasure and invitation—such as she may invite to dwell in the family with her—" members of her family," is the expression used.

The annuity, let it be remembered, is given to *her,* for her life, to be paid to *her ;* and she alone can receive it and execute a legal discharge for it. Had the testator intended to create a trust for nephews and nieces, and strangers, (for they too may become inmates,) he would have made it similar to the other trusts of the will, and would have empowered his confidential trustees, *Townsend* and *Pardee,* to execute it ; as they do the other trusts of the will.

Looking through the whole will, it would seem manifestly a harsh and strained construction of the 14th article, to say, that the testator intended, by this provision, for his niece

---

(a) To avoid unnecessary prolixity, the *twelfth* article, here referred to, and some other portions of the will, occasionally alluded to, have been omitted, in the statement of the case.

*New-Haven,*
July, 1851.

Harper & ux.
*v.*
Phelps & ux.

Mrs. *Phelps*, to make her the *sub*-trustee of the general trustees ; and especially, as the trust terminates with her life, and the four nephews and nieces, claimed to have some special rights in this annuity, may survive their aunt, and be in dependent and necessitous circumstances. If the nephews and nieces were intended, by the will, to be the beneficiaries of the *testator's* bounty, rather than that of Mrs. *Phelps*, it is strange, that the will, so carefully drawn, does not say so, explicitly. This would have been most natural. And why give her such discretionary power over a fund, which belongs absolutely, in part, to other persons? Why too, make the legacy dependent on *her* life, rather than on the lives of the beneficiaries themselves? No reason can be perceived why the testator is supposed to single out these children of his brother *Benjamin* to be the special objects of his favour and bounty ; the nephews had never lived in his family ; nor had they ever been under the care of his niece *Catharine ;* nor does it appear, they were specially near to him. True, they had occasionally received aid, from his generosity, to defray the expenses of their schooling and support, as undoubtedly did other nephews and nieces. In his will, he manifestly ranks these nephews and nieces with the rest of his relatives in equal degree ; and he gives each 5,000 dollars, and the annuity, in addition, to Mrs. *Phelps.* This annuity is given to her, over and above all else, in order to enable *her* to make them, and other relatives and strangers, if she pleased, objects of her favour, *in her own family.* Surely, the testator does not intend to make her *his* almoner, when he provides that *her* generosity, *her* election, *her* pleasure, shall denote the beneficiaries of this provision.

The language of the testator, whatever else may be said of it, imposes no *legal* obligation on Mrs. *Phelps* in the use or distribution of the annuity. He expresses perhaps the motive or cause of the gift; but he does not put a condition upon it, and place her under a legal responsibility to others. The disposition of the annuity belongs to that class of cases where it is the intention of the testator to leave the whole subject of disposition, as a pure matter of discretion, to the judgment and pleasure of the party enjoying his special confidence ; and where his expressions of desire are intended as mere moral suggestions to excite and aid that discretion, but

not absolutety to controul and govern it, or in the language of Ch. J. *Church,* in *Gilbert* v. *Chapin,* 19 *Conn. R.* 348. " No trust will be raised, by expressions in a will importing recommendation, hope, confidence, desire, &c., &c., unless there be certainty as to the parties who are to take ; nor if a discretion whether to act or not, be left with a devisee, or so called trustee." It is a principle of equity, well established by numerous cases, that to raise a trust, it must be ascertained what proportion each beneficiary is to take. *Bardswell* v. *Bardswell,* 9 *Sim.* 320. *Pope* v. *Pope,* 10 *Sim.* 1. *Curtis* v. *Rippon,* 1 *Madd. R.* 434. *Knight* v. *Knight,* 3 *Beavan,* 148. 1 *Jarm.* on *Wills,* 338. Now, who will assert, that in this article in Mr. *St. John's* will, the *beneficiaries,* or their *proportions,* except Mrs. *Phelps,* are definitely ascertained and fixed ; or that any practicable rule for ascertaining either, is given ? She may invite into the family whom she pleases, relatives or strangers ; but this election is too indefinite as a rule of property, and as such, must therefore, be held void and inoperative. Besides, the two nieces *Mary Jane* and *Lucinda Amelia,* " now under her care," though alluded to, in the manner of her enjoying the legacy, as possibly to be members of her family, the nephews, *William A.* and *George S.,* are not so alluded to ; nor were they ever subjects of her care, nor nearer to her than the other nephews and nieces of herself, or of the testator. Wherever the objects of the supposed recommendatory trust are not certain or definite ; or wherever the property to which it is to be attached, is not certain or definite ; or wherever a clear discretion and choice to act, or not to act, is given ; or wherever the prior dispositions import absolute and uncontroulable ownership ; in all such cases, courts of equity will not create a trust from words of this character. 2 *Sto. Eq.* § 1069. 1070. 3 *Beavan,* 148. *Gilbert* v. *Chapin,* 19 *Conn. R.* 342. and cases there cited.

The plaintiffs then fail to make out a case for distributing this annuity fund. They present no certain rule for settling the distribution, or the supposed share belonging to Mrs. *Harper.* They talk of one-fifth as a rule, it is true ; but for what reason we cannot apprehend. Before we can feel it to be our duty to adopt that principle of distribution, we should unhesitatingly pronounce this bequest to be utterly void for

New-Haven,
July, 1851.

Harper & ux.
v.
Phelps & ux.

uncertainty and indefiniteness. We have already alluded to another difficulty, which appears to us insurmountable by the plaintiff, unless we are prepared to discard the intention of Mr. *St. John* in his bounty towards Mrs. *Phelps.* The annuity is to be paid to Mrs. *Phelps*, primarily to support *her family.* A furnished house is provided for her ; and the annuity is to enable her to live in it, in a style, as we think, corresponding with the rank and habits of life, in which she had lived, in her uncle's family. Surely, he did not mean, that as soon as he was dead, she should be forced to earn a livelihood, by taking boarders in her elegant and "furnished" house, or to live upon a scanty allowance inadequate to the maintenance of the establishment committed to her care. Is it possible, that Mrs. *Phelps*, after this generous provision for a respectable family establishment, is to be deprived of this provision, and to pay over four-fifths of the annuity to four nephews and nieces, leaving for herself only 400 dollars, to fulfill the wishes of the testator ? And to do this too, irrespective of their places of residence, or their necessities and circumstances in life ; or is she to be compelled to receive them into her family, whatever may be her own situation, even though they become ever so unworthy of her care, and utterly indifferent to her comfort and happiness ?

And further, if this annuity is to be considered a trust, why is it not, as we have already hinted, put into the hands of the selected trustees, *Townsend* and *Pardee*, for the beneficiaries of the *testator*, and not paid over by them to a *sub*-trustee for the same identical purpose, imposing an onerous burden upon an inexperienced and delicate female, who too might contract new relations in life, inconsistent with the trust, and, as it might be, take up her residence abroad, in this or any foreign country ? And further, we have already said, that the legacy is made to fall with *her* life, even though she may die immediately after the testator. A strange provision this for nephews and nieces !

Our conclusion is, that the superior court be advised, that the plaintiffs' bill be dismissed, with costs.

In this opinion the other Judges concurred.

Bill dismissed.