MILTON S. CLIFFORD *vs.* GERTRUDE H. STEWART, and others.

Penobscot.    Opinion February 8, 1901.

*Will.   Debts of Legatees.   Trusts.*

1. Thomas J. Stewart, husband of the testatrix, and their three sons, C. E. and R. constituted, at one time, the firm of Thomas J. Stewart & Co. After the death of the father, the three sons became indebted to the testatrix. The firm of Thomas J. Stewart & Co., both as originally constituted and as existing after the death of Thomas J. Stewart, were indebted to others besides the testatrix. By her will the testatrix devised the residuum of her estate " to G. M. and C. wives of my sons C. E. and R. and to my son H. D. S. equally share and share alike, and I wish that the indebtedness of Thomas J. Stewart & Co. shall be deducted from the shares and property so given and devised to said wives of my sons C. E. and R." *Held;* that the phrase " indebtedness of Thomas J. Stewart & Co." in the foregoing clause relates only to the indebtedness of that firm to the testatrix and not the indebtedness of that firm to others; and that only the indebtedness of the firm consisting of the three sons C. E. and R. to her is to be deducted from the legacies given to their wives.

2. In making the division, this indebtedness should be regarded as an asset, and if it is not paid before division, this indebtedness should be added to the remainder of the residuum, and of the whole amount thus obtained, one-fourth will go to Harry D. Stewart; the other three-fourths will go to the wives of the other three sons, one-fourth to each, their actual proceeds, of course, being diminished from their mathematical shares by the amount of their husbands' indebtedness as a firm to the estate.

3. The following bequest:—" I give to my grandchildren one thousand to each one, and I wish and direct that this shall be devoted and expended for their education,"—is held to create a trust; and the duty of administering the trust devolves upon the administrator with the will annexed.

4. It is held by the court that the words in item 4 of the will: " I wish that the property so as above given, to said three wives of my three sons, be for the education of their children and the support of their families respectively," created a trust upon the estate bequeathed to the wives to the extent of securing the education of the children of the three sons, thus referred to, of the testatrix, and the support of their families.

5. Each wife may hold her share in trust separately from the others.

On report.   Trusts sustained.

Bill in equity by the administrator with the will annexed, and heard on bill and answers, to obtain a construction of the first and

fourth clauses of the will of Mary M. Stewart, late of Bangor, deceased.

The case is stated in the opinion.

*M. S. Clifford*, for plaintiff.

*C. H. Bartlett*, for grandchildren.

Formal words of trust are not absolutely necessary.    *Cole* v. *Littlefield*, 35 Maine, 439, p. 444; 27 Am. & Eng. Enc. of Law, p. 26.    If the words be regarded as precatory, there are numerous authorities to show that a trust was intended.    1 Perry on Trusts, § 117; 27 Am. & Eng. Enc. of Law, Title, Trusts & Trustees, Provisions for Maintenance, p. 36; *Cole* v. *Littlefield*, supra; *Warner* v. *Bates*, 98 Mass. 274.

In considering a will, the intent of the testator is to be gathered from the whole will.    *Mann* v. *Jackson*, 84 Maine, 400.    This is also the rule with reference to precatory trusts.    2 Bouvier's Law Dict. Title, Precatory Words, p. 718, Rawle's Revision; 2 Redf. Wills, *416, (3rd ed.)    The question is whether, taking the will as a whole, it was the intention of the testator to create a trust. *Aldrich* v. *Aldrich*, 172 Mass. 101.

Did the testator intend to control the action of the legatee or only offer a suggestion without creating any obligation that it should be carried out?    1 Perry on Trusts, § 114; Schouler on Wills, (2nd ed.) § 595; *Aldrich* v. *Aldrich*, supra.

It is not the case of a "hope," an "expectation" or a "confidence," the words mentioned in many of the cases of precatory trusts, but it is a command.    The word "enjoin" is a command. 11 Am. & Eng. Enc. of Law, Title, Enjoin, p. 37, (2nd ed.)

*F. H. Appleton and H. R. Chaplin*, for Gertrude H. Stewart and others.

If clause IV means that all the indebtedness of T. J. Stewart & Co. to whomsoever it is owed, is to be paid out of the shares which are given to the wives, then the wives get nothing because the will must be construed as though it read, "I wish all the indebtedness of Thomas J. Stewart & Co. to whomsoever it is owed to be paid to such creditors," and to do that would take practically the whole

estate. The will uses the word "deducted" not the word "paid." The indebtedness of T. J. Stewart & Co. is to be deducted not paid, unless "deducted" means deducted and paid. That would be giving the word "deducted" a forced and unnatural meaning. If the word "indebtednesss" be applied only to the indebtedness of T. J. Stewart & Co. to the testatrix, the interpretation of this portion of the will is plain; the word "deducted" is given its common meaning and nothing is forced about the will or about any words therein. If the testatrix intended to have the general creditors of T. J. Stewart & Co. paid she would have plainly said so, and if she supposed she would leave more than enough to do that, there would then have been no need of giving the remainder to their wives.

Precatory Trust: Pomeroy's Eq. Jur. §§ 1015, 1016, 1017.

Is this a trust for maintenance? Pomeroy's Eq. Jur. § 1012. The precatory words "wish" and "enjoin" raise no presumption of an intention on her part to create such trust. There should be no reasonable doubt about it. *Meredith* v. *Heneage*, 1 Sim. 542, 551.

Clause 1: The fact that under the circumstances she gave the property to the wives is strong proof that she did not intend to create a trust. 1 Perry on Trusts, § 115; *Webb* v. *Wools*, 2 Sim. (N. S.) 267.

There is no question but that the son Harry took a fee, and identically the same words which gave Harry the absolute fee gave also the property to the wives; stopping at that point, the wives certainly took a fee just as much as Harry did. Now if the latter part of clause IV attaches a trust to the wives' part, then the latter part of clause IV, as stated in *Webb* v. *Wools*, contradicts the first part of clause IV. The fact that the persons who are to take are not specified clearly enough, goes to a certain extent towards inducing the court to declare that there is no trust. *Lambe* v. *Eames*, 10 L. R. Eq. 267.

The words "wish" and "enjoin" raise no presumption of a trust. If Pomeroy's rule is the correct one, then the court must be satisfied that Mrs. Stewart's intention to create a trust was full,

complete, settled and sure; unless the court are satisfied to that
extent, no trust ought to be declared. All doubt should be in
favor of no trust. The situation of the parties and sons' wives and
children do not call for a trust. The sons and their wives do not
desire it. A decision against a trust makes all parts of the will
harmonious and will carry out the real intention of the testatrix.

The words "wish" and "direct" are used in paragraph 1 in this
will, and the words "enjoin" and "request" appear in paragraph
III, the words "wish and enjoin," we have discussed as they
appear in paragraph IV. The frequency with which the words
are used in the will seem to warrant the conclusion that no techni-
cal meaning was attached to any of them; on the contrary that
they were loosely employed to express the mother's solicitude for
the welfare of her children and grandchildren.

*P. H. Gillin,* for Harry D. Stewart.

At the time of the decease of Mary M. Stewart, Thomas J.
Stewart & Co., composed of three of her sons, and not our client,
were practically insolvent and indebted to general creditors outside
of her estate at least in the sum of $80,000, and the mother knew
this fact. If the court should have any hesitancy about saying
that she meant the indebtedness to her and not to general creditors,
we ask the right to have the case come back to show these facts.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE,
FOGLER, POWERS, JJ.

SAVAGE, J. Bill in equity to construe the will of Mary M.
Stewart, late of Bangor. The clauses of the will requiring con-
struction are these:

I. "I give to my grandchildren one thousand ($1000) to each
one, and I wish and direct that this shall be devoted and expended
for their education."

IV. "All the rest and remainder of my estate of every kind
real and personal I give and devise to said Gertrude, Martha and
Cara, wives of my sons, Charles, Edward and Rowland, and to my

son Harry D. Stewart equally share and share alike, and I wish that the indebtedness of Thos. J. Stewart & Co. shall be deducted from the shares and property so given and devised to the said wives of my sons Charles, Edward and Rowland, and that the property so as above given to said three wives of my three sons be for the education of their children and the support of their families respectively—and I enjoin upon them so to use and expend it."

This court is called upon to determine:

1.   Whether a trust was created by the first item in the will, and, if so, upon whom the trust devolves.

2.   Whether in the fourth item any indebtedness of Thomas J. Stewart & Co. is referred to except the indebtedness of that firm to the testatrix, and whether other creditors of that firm have any interest under this item.

3.   If other creditors have no interest, what are the respective shares under item IV of Gertrude H., Martha J. and Cara A. Stewart, wives of three of the sons of the testatrix, and the share of Harry D. Stewart, the other son, in case the indebtedness of Thomas J. Stewart & Co. to the testatrix can be collected, and also in case it cannot.

4.   Whether a trust is created under item IV for the education of the children and the support of the families of Gertrude H., Martha J. and Cara Stewart, and if so, what is its nature, duration, and how shall it be properly executed.

It appears that the firm of Thomas J. Stewart & Co. was formerly composed of Thomas J. Stewart, the husband of the testatrix, and their three sons, Charles, Edward and Rowland, and that after the death of Thomas J. Stewart the three sons continued in business under the old firm name, and were at the date of the will indebted to the testatrix to the amount of about ten thousand dollars.   It further appears that the firm of Thomas J. Stewart & Co., both as originally constituted and as existing since the death of Thomas J. Stewart, were indebted in the aggregate to more than the total assets of the testatrix as shown by the inventory of the estate, and this was in addition to the debt of the later firm to

the testatrix. These facts, being conditions existing when the will was made, may properly be considered in interpreting the language of the testatrix in the will, which might otherwise be of doubtful import.

I. We first consider what was meant by the phrase, "the indebtedness of Thomas J. Stewart & Co.," found in item IV. Was it the intention of the testatrix to require that all the indebtedness of either or both firms of Thomas J. Stewart & Co. to all persons whatsoever be deducted from the legacies to the wives of three of the four sons, or did she intend the indebtedness only of the three sons to herself to be so deducted ? We have no doubt it was the latter. The intention was perhaps ambiguously expressed. There may have been a clerical oversight in drafting the will. The insertion of the words "to me" after the word "indebtedness," we think would have clearly expressed her intention. She had four sons. Three of them were indebted to her, and were largely indebted to other parties. The fourth was not. No reason is shown why she wished to discriminate in favor of the one and against the other three, and the will strongly shows that she did not. She gave one-fourth to the son not in debt. She gave three-fourths respectively to the wives of the sons who were in debt, probably to save the legacies from the creditors of the sons, and she enjoined upon the wives to expend the property for the education of the children and the support of the families of the sons; so that, in effect, the sons would receive the direct benefit of it. But she directed an "indebtedness of Thomas J. Stewart & Co." to be deducted from the legacies to the sons' wives. If that meant the indebtedness only of the sons, their husbands, to her, the effect would be that that indebtedness would be regarded as an advancement on account of their shares to be deducted in the final distribution to their wives. And in this way the entire residuum would be divided fairly and evenly, the one not indebted getting one-fourth, and the other sons getting substantially the benefit of the other three-fourths, less their indebtedness to the testatrix. On the other hand, if she intended the entire indebtedness of the firms of Thomas J. Stewart & Co. to be deducted, it would follow that

the son not indebted would get his fourth clear, and the other branches of the family would get nothing. The legacies to the wives of the sons indebted would be charged, not only with the payment of their husbands' debts to the testatrix, but with the payment of all the debts of the firms to all persons, to an amount which would entirely wipe out their shares in the residuum. This result is seemingly so unnatural and inequitable, that, in the absence of controlling language in the will, we cannot believe it was intended by the testatrix. She was under no obligation moral or legal to see that the debts of Thomas J. Stewart & Co. in general were paid, but she might well wish that the debts of the three indebted sons should be deducted from the legacies to their wives, thereby giving to the other his clear fourth in all her residuary estate, including the debt due from the other sons.

We hold, therefore, that only the indebtedness to the testatrix of the firm of Thomas J. Stewart & Co., consisting of the three sons, Charles, Edward and Rowland, is to be deducted from the legacies given to their wives. And in making the division, this indebtedness should be regarded as an asset, and if it is not paid before division, this indebtedness should be added to the remainder of the residuum, and of the whole amount thus obtained, one-fourth will go to Harry D. Stewart; the other three-fourths will go to the wives of the other three sons, one-fourth to each, their actual proceeds, of course, being diminished from their mathematical shares by the amount of their husbands' indebtedness, as a firm, to the estate.

II. The bequest in item I, of one thousand dollars to each of the grandchildren of the testatrix, must, we think, be regarded as creating a trust. The grandchildren are minors, and the legacies are expressly devoted to their education. The language used expresses much more than the mere wish that the legacies be devoted to that purpose. It does not purport to be advisory. It contains an explicit direction. I "direct that this shall be devoted and expended for their education." Nothing more is required for the creation of a trust. And not only the precise language used supports this construction, but the fact that the grandchildren were minors,

not capable in law of receiving and applying the funds for themselves, further tends to support the same conclusion. The testatrix must have contemplated that some person or persons, other than the grandchildren, must hold the fund and cause it to be properly expended. All these considerations lead us to hold that these funds expressly devoted to the education of the grandchildren are trust funds.

Who is to execute the trust? The will names no one. The general rule must apply. Whenever any interest in the nature of a trust, or any person implying a trust, is created by a will, and there is no special designation of the executor or any other person as trustee, it is incumbent upon the executor as such to administer the estate according to the provisions of the will. *Nutter* v. *Vickery*, 64 Maine, 490. But in this case, the executors named in the will declined to accept the trust, and an administrator with the will annexed was appointed. We think the duty of administering this trust now devolves upon the administrator. Such an administrator is clothed with the general functions of an executor. He succeeds to his rights and duties. He is to administer according to the will. He must do the things which the executor as such would have been required to do. And we have no doubt that he succeeds to the trust that would have devolved upon the executor by operation of law. *Knight* v. *Loomis*, 30 Maine, 204; *Saunderson* v. *Stearns*, 6 Mass. 37; *Buttrick* v. *King*, 7 Met. 20; *Blake* v. *Dexter*, 12 Cush. 559; Woerner on American Law of Administration, 392; Schouler on Administrators and Executors, § 122.

III. Is a precatory trust created in item IV of the will by the words, "I wish that the property so as above given to said three wives of my three sons be for the education of their children and the support of their families respectively—and I enjoin upon them so to use and expend it?" It is not necessary for us to consider critically the doctrine of implied or precatory trusts. That words of trust and confidence, expressions of recommendation and desire, as well as words of direction and command, in a will, have many times been deemed to indicate an intention on the part of a testator to clothe a legacy with a trust, requires no citation of authorities

to show. It is likewise true that similar, and even identical expressions in other wills have been held to create no trust. Words seemingly imperative have been held to be advisory merely, and words of advice have had given to them the force of injunctions. The test is one of intention in the testator, and this intention is to be gathered from the whole will,—the context, as well as the particular words of recommendation and confidence. And moreover the will is to be construed in the light of existing conditions, which are rarely the same in any two cases. These considerations will explain much of the seeming diversity of opinion in the decisions of the courts. It is said that the leaning of the courts is against the implication of a trust from words of confidence, that the current of decisions is now changed, and that many expressions formerly held to be indicative of a trust would not now be so held. Pomeroy's Equity Jurisprudence, § 1015. We think this means merely that courts now place less reliance than formerly upon the precise words used, and more upon the meaning of the will or the particular bequest, taken as a whole. The intention of the testator must be found from the whole will.

So it is said that the court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner. Pomeroy's Equity Jurisprudence, § 1016. This means, as we understand it, that the testator must have intended to create an actual trust. That intention must be found by the court as a fact. It is not to be guessed at. The crucial test after all is whether the testator actually intended his language to be imperative, whether he intended to govern and control the action of the legatee, to impose an obligation or duty upon him in the use of the property, or whether he intended his words to be merely advisory, no matter how urgently expressed, still leaving it to the discretion of the legatee whether that advice should be followed or not. *Warner* v. *Bates*, 98 Mass. 274; *Whipple* v. *Adams*, 1 Met. 444; *Barrett* v. *Marsh*, 126 Mass. 213; *Van Amee* v. *Jackson*, 35

Vt. 173; *Harper* v. *Phelps*, 21 Conn. 257; *Bohon* v. *Barrett*, 79 Ky. 378; *Murphy* v. *Carlin*, 113 Mo. 112; *Colton* v. *Colton*, 127 U. S. 300; *Knight* v. *Boughton*, 11 Clark & Finnelly, 513; 1 Perry on Trusts, 109; 2 Story's Equity Jurisprudence, § 1059; 1 Jarman on Wills, 385.

It is not necessary that the testator should have had in his mind the idea of a trust, eo nomine. It is sufficient if he intended that his will should follow the property after his death and imperatively control or limit its use. Technical language is unnecessary. *Colton* v. *Colton*, supra.

Now let us apply this rule to the case at bar. Referring to what we have already said in the former part of this opinion, it appears that the testatrix left four sons, three of whom were deeply involved financially. To the other son she gave one-fourth of the residuum absolutely, but the other three-fourths she gives, not to the other three sons, but to their wives. If the language so far stood alone, there is no doubt the wives would have taken an absolute estate. But it does not stand alone. Neither does the language contain any expression which necessarily affects any subsequent provisions relating to the estate. See *Colton* v. *Colton*, supra. Though she gave the legacies to the wives of the sons, she wished the sons themselves to have the benefit, in part at least, of the bequest. She said, "I wish . . . . the property so as above given . . . . to be for the education of their children," *the father's duty*, "and the support of their families," *the duty of the husband and father;* and then, as if the expression of a wish were not enough, she laid an injunction upon the wives, "And I enjoin them so to use and expend it." While the use of the word "enjoin," especially if qualified by other expressions in a will, does not necessarily mean that a trust is thereby created, *Lawrence* v. *Cooke*, 104 N. Y. 632, yet here, in just the manner in which and the place where it is used, "enjoin" is both emphatic and significant. It is a mandatory word; in legal parlance, always, Bouvier's Law Dictionary, in common parlance, usually, Webster's Dictionary. We cannot resist the conclusion that the testatrix intended to create a trust upon the estate bequeathed to the

wives to the extent of securing the education of her sons' children and the support of their families, whatever might be the exigencies of life. *Blouin* v. *Phaneuf*, 81 Maine, 176; *Chase* v. *Chase*, 2 Allen, 101; *Colton* v. *Colton*, supra. We do not think it was intended that the wives should be at liberty to withhold the application of the property from the expressed uses to which the testatrix said she wished it to be applied. The bequest then created a trust in the share given to each of the wives.

Nor do we think that the trust can fail by reason of any indefiniteness in the beneficial objects. Certainly not as to the children, for they are a class whose membership is definite and known. And while the individuals who compose a family may vary from time to time, who constitute it at any given time is not uncertain in law. *Knight* v. *Knight*, 3 Beav. 148; *Lambe* v. *Eames*, 6 Ch. App. 597; *Wright* v. *Atkyns*, 19 Vesey Jr. 301; *Chase* v. *Chase*, supra; Pomeroy's Equity Jurisprudence, § 1014, note; Story on Equity Jurisprudence, § 1071.

Further, the use of the word "respectively" indicates that each wife may hold her share of the estate in trust, separately from the others.

The court is asked to declare how the trust shall be properly executed, and what persons have any interest or benefit under the fourth item of the will, and the extent, amount and nature of such interests.

But we think we are not in possession of sufficient information concerning the nature of the trust property, or the composition of the families of the sons of the testatrix to answer further than we have already done.

Should it become necessary, the trustees can apply to the court for specific instructions.

Costs, including reasonable counsel fees, may be allowed to all parties who have appeared, to be paid by the administrator and charged in his account of administration.

*Decree accordingly.*