**EVANS v. OCKERSHAUSEN and three other cases.***

**Nos. 7062–7065.**

United States Court of Appeals for the District of Columbia.

Decided Oct. 31, 1938.

Rehearing Denied Nov. 23, 1938.

*Writ of certiorari denied Smith v. Ockershausen, 59 S.Ct. 462, 83 L.Ed. ——.

MILLER, Associate Justice, dissenting in part.

—◆—

John E. Laskey, of Washington, D. C., for Ella M. Ockershausen.

Thomas F. Burke and G. Bowdoin Craighill, both of Washington, D. C., for Henrietta Kolipinski Evans.

Michael M. Doyle and Frederick A. Thuee, both of Washington, D. C., for Emilie Kolipinski Bucy.

David F. Smith, of Washington, D. C., for Eleanore Kolipinski Smith, guardian ad litem for the Smith infants; and appellant in pro. per.

Austin F. Canfield, of Washington, D. C., guardian ad litem for the Bucy and Evans infants.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

The construction made by the lower court of the last will and testament of Dr. Louis Kolipinski, deceased, is the subject matter of these several interrelated appeals, filed from a single cause below and argued as one appeal.

We insert below the last will and testament of Dr. Kolipinski.[1]

[1] "In the Name of God: Amen.

"I Louis Kolipinski Physician of the City of Washington, District of Columbia being in good health and of sound and disposing mind and memory, do make publish and declare this to be my last will and testament, hereby revoking and annulling any and all wills by me at any time heretofore made

"Item: I give devise and bequeath all my real estate wheresover situated which I now own, or which I may have any interest in, legal or equitable at the time of my death, unto my wife Ella. M. Kolipinski absolutely and in fee simple according to the nature of property. To have and to hold the same unto and to the use of my said wife Ella M. Kolipinski her heirs and assigns. In and upon the trusts nevertheless hereinafter set forth, that is to say: In trust to manage and control the same and to collect all income therefrom arising, and after the payment of all my funeral expenses, all my just debts and the costs of the administration of my estate, including all taxes of any kind, then to use said income of my real estate for the benefit, support and maintenance of my said wife Ella. M. during her life and the lives of my children now living and for any children that may hereafter be borne to me. Upon the death of my said wife and children said real estate shall descend to their right heirs at law.

"Item: For the purpose of carrying out the full provisions of this my last will, it is my intentions that my real estate shall be preserved as a whole for the benefit, support and maintenance of my said wife Ella M. and my children during their lives; but occasions may

Dr. Kolipinski married Ella M. Kolipinski on August 20, 1902. On November 2, 1910, his 51st birthday, he made his last will and testament. His wife was 19 years his junior. At that time there were six children, ranging in age from 7 months to 7 years, all of whom, with his wife, survived his death on December 15, 1914. From marriage until his death he was a resident of the District of Columbia.

The will of testator was admitted to probate and his wife qualified and acted as executrix thereof. He left real estate in the District of Columbia appraised at approximately $432,000 and personalty inventoried at $39,855.65. During the period of administration the executrix collected all income, including rents, and paid all expenses of maintaining the real estate. Decedent's funeral expenses and just debts, including all taxes, were fully paid.

The executrix turned over to herself as Trustee a fund of $12,000 created for the benefit of Emilie Weiss, a sister of testator, for life; a fund of $20,000 to herself as Trustee to settle and satisfy any claims that might arise against her as Trustee in the management and protection of the real estate; and paid the residue of the personalty, $9,437.34, to herself as

arise when a part or the whole of my real estate may be sold at a great advantage. I therefore authorize and empower my said trustee to sell any part, or the whole of my said real estate at any time for a sum at not less that two (2) and one (1) half (½) times the then assessed value of my said real estate, and to transfer and convey to the purchaser or purchasers a perfect title. But my said trustee is not authorized to Mortgage any part of my real estate for any purpose

"Item: Should any part of my real estate be sold, it is my will, and I so direct my trustee to immediately invest the money so realized from said sale in other real estate in the District of Columbia, the income therefrom to be used for the same purpose as I have hereinbefore more fully set forth.

"Item: I give and bequeath to my executrix and trustee herein named the sum of twelve thousand dollars ($12,-000.00) from my personal estate in trust, to invest in first Deeds of Trust upon real estate in the District of Columbia at interest at not less than five (5) per centum per annum, this interest or income, I direct shall be paid to my sister Emily Weiss in periods of every six months for and during her natural life, and upon her death said principal sum and any income that may be due my said sister shall revert to my estate

"Item: In the event, that the total value of my personal estate, consisting of either money, bonds, or other securities shall equal the sum of Ten thousand dollars ($10,000.00) or more; I then give and bequeath the same to my wife Ella M. in trust to hold as a fund, with which to settle and satisfy any and all claims, demands, suits or damages that may arise against my said wife as trustee in the management and protection of my said real estate; Provided that said trust fund shall not exceed the sum of Twenty thousand dollars ($20000.00). Said trust fund shall be kept on deposit in one or more Banking institutions at interest, which interest shall be addeded to the income hereinbefore provided and to be used for the benefit, support and maintenance of my said wife and children.

"Item: All the rest and residue of my estate of which I may die seized and possessed, or to which I may be entitled at my death, I give devise and bequeath unto my wife Ella M Kolipinski her heirs and assigns forever

"Item: Should my said wife Ella M. Kolipinski marry at any time after my death; or during the minority of either of my two oldest living children; or should my said wife die; then, in either event I hereby authorize, direct and empower any of my said children, to institute proceedings in the courts of the District of Columbia for the appointment of a competent trustee, in the place and stead of my said wife, who shall act as said trustee until such time as my two oldest living children shall arrive at their majority, then said substituted trustee shall thereupon surrender his said trust to and in favor of my two oldest living children, who are hereby appointed trustees with the same authority and power, as herein given and granted unto my said wife, or to the substituted trustee appointed in her place and stead

"Lastly: Having every confidence that my wife will carefully carry out my wishes in this my last will, I hereby nominate and appoint my said wife Ella M. Kolipinski to be the executrix of this my last will and testament, and that she is hereby expressly absolved from the giving any bond either as said executrix or trustee

"In Witness whereof, I Louis Kolipinski testator aforesaid have to this, my last will and testament consisting of six pages of paper set my hand and seal this 2nd day of November A. D. 1910
      "Louis Kolipinski, (seal)."

residuary legatee. Final account of the executrix was approved and passed. Thereafter she entered upon her duties as trustee under the will, and managed and controlled the real estate and collected the income therefrom arising.

On August 15, 1918, Ella M. Kolipinski was married to one Louis F. C. Ockershausen. At the time of this marriage the eldest child was 15 years of age. No proceedings were instituted for the appointment of a substitute trustee under the will, and she continued to act as such trustee in the management and control of the trust estate. Emilie Weiss died May 28, 1923, and Mrs. Ockershausen thereupon paid to herself individually the $12,000 trust fund set up aforesaid. Henrietta Kolipinski, now Henrietta Evans, second of testator's oldest two living children reached the age of 21 years on September 17, 1925. At that time this daughter was very ill. Mrs. Ockershausen continued to act as trustee in fact of the estate of Dr. Kolipinski after Mrs. Evans attained her majority.

After the death of Dr. Kolipinski, Mrs. Ockershausen used the income of the estate, after paying the expenses of the estate, to maintain the family home, to support herself and her children, to educate them and to provide medical attention; before their respective marriages she gave them spending money and whatever they asked for; after their marriages, in lieu of the spending money, she gave each a regular "allowance", which was increased from $100 a month each to $175 per month each, and on special occasions made gifts to them.

On December 23, 1930, Emilie Kolipinski Bucy and Henrietta Kolipinski Evans (the two oldest children), at the request of their mother, signed and verified a petition, in which they were averred to be trustees of the estate of Louis Kolipinski, deceased, asking authority to accept the offer of the District of Columbia for the purchase of a parcel of real estate. This petition was filed and sale was thereupon duly authorized by the lower court for the sum of $84,000 which was thereafter consummated. A check for $84,000 payable to the order of Mrs. Bucy and Mrs. Evans, trustees, was received by Mrs. Ockershausen and sent by her to her daughters with the request that they indorse it and return it to her. The check was thereupon indorsed by the daughters, as trustees, and transmitted by them to Mrs. Ockershausen, who paid from the proceeds of sale the charges and expenses incident to such sale, and deposited the remainder of the proceeds in savings accounts, at interest.

In 1935, at the request of Mrs. Bucy and Mrs. Evans, Mrs. Ockershausen transferred to them, as trustees, $64,144.22 the remainder of the proceeds of sale, *supra,* which was on deposit in banks. On December 31, 1935, under order of the lower court, Mrs. Ockershausen turned over to her daughters, Mrs. Bucy and Mrs. Evans, as trustees, the active management and control of the trust estate, and formally delivered to them as such substituted trustees all of the real estate of the trust estate then in her possession.

On September 25, 1935, Mrs. Ockershausen filed her bill in the lower court, naming her four children and seven grandchildren (made parties defendant by amendment) as defendants, and prayed (1) that the court construe the will of Dr. Kolipinski, deceased, and determine her rights and the rights of the defendants thereunder in and to the income of decedent's estate; and (2) that the court construe the will with reference to her right to the principal of the trust funds of $12,000 and $20,000. Answers or cross-bills were filed by all defendants, the minor children being represented by guardians ad litem.

On June 15, 1936, the lower court, Mr. Justice Bailey, filed an opinion, and on June 22, 1936, filed an order in the cause which decided that Mrs. Ockershausen was entitled in her own right, during her life to the net income of the trust estate created by the will of Dr. Kolipinski, and that her children had no right to any part of this income until after her death; that Mrs. Bucy and Mrs. Evans, trustees, must pay over to Mrs. Ockershausen, in her own right, all the net income of and from the trust estate created by the will of Dr. Kolipinski; that the fund of $20,000 was a part of the trust estate created by the will; that the fund of $12,000 belonged absolutely to Mrs. Ockershausen in her own right; and referred the cause to the Auditor of the lower court for an accounting by Mrs. Ockershausen of the corpus of the trust estate, for the receiving of testimony and the making of recommendations as to the fees and allowances, if any, to be made out of the trust estate to the guardians ad

litem for the infant defendants, and to counsel for the adult parties to the cause, and for the reporting of the account and recommendations and the evidence taken to the court. The cause was continued to await this report.

On November 27, 1936, several of the infant defendants, by their guardian ad litem, filed a motion requesting the Auditor to make special findings and conclusions, on the evidence, of depreciation and obsolescence of the properties which comprised the trust estate. The Auditor failed to comply with the requested motion, and duly filed his report on May 19, 1937. Exceptions were filed with the lower court because of the failure of the Auditor to make the requested findings; and, also, to the findings and conclusions of the report.

On July 12, 1937, the lower court, Mr. Justice O'Donoghue, entered a final decree, in accordance with the foregoing opinion filed on June 15, 1936 and order filed on June 22, 1936. This final decree held substantially the same as the prior one, and in addition overruled the exceptions to the Auditor's report filed in the case on May 19, 1937, and the motion to remand to the Auditor. It approved and confirmed the report of the Auditor; and held that Mrs. Ockershausen was indebted to the substitute trustees in the amount of $19,120.60, for which they were given execution as at law. The decree also directed the substituted trustees to pay from corpus to counsel for Mrs. Ockershausen $5,000, to counsel for the trustees $3,000, and to each of the two guardians ad litem of the minor remaindermen $2,000.

Numerous exceptions were taken by and allowed to the several parties to this final decree. These exceptions present the following questions to be decided in this opinion:

1. Is Mrs. Ockershausen entitled during her lifetime to the income of the real estate trust?

2. Is the fund of $12,000 set up in trust for testator's sister payable to Mrs. Ockershausen, as residuary legatee?

3. Is the fund of $20,000 set up in trust for the wife, as trustee, to protect against claims and damages, a part of the real estate trust?

4. Is the expenditure for electric refrigerators, the tax on capital gains, and the special assessments for street paving chargeable to corpus or income therefrom?

5. Was there a duty upon the trustee to set up a reserve for depreciation of the real estate?

6. Is David F. Smith, husband of Eleanore Kolipinski Smith, properly dismissed as counsel for his wife and does he have an attorney's lien against the wife?

■ (1) This will must be interpreted so as to effectuate the true intent of the testator as expressed in the will. This is the primary and basic rule to which all others must yield. Smith v. Bell, 6 Pet. 68, 74, 31 U.S. 74, 8 L.Ed. 322. It is not to be construed by isolated expressions, but must be construed in its entirety. Further it is true that "In determining the intent of the testator, little aid is derived from a resort to formal rules or a consideration of judicial determinations in other cases apparently similar." Baldwin v. National Sav. & Tr. Co., 65 App.D.C. 174, 176, 81 F.2d 901, 903.

■ After payment of funeral expenses and debts, and the establishment of the personal trusts aforesaid, there remained a residuary estate of $9,437.34, which, under the terms of the will, was payable to the wife. Having disposed of all his personal property, we find this language in the will affecting his real estate:

"I give devise and bequeath all my real estate where*so*ver situated which I now own, or which I may have any interest in, legal or equitable at the time of my death, unto my wife Ella. M. Kolipinski absolutely and in fee simple according to the nature of property. To have and to hold the same unto and to the use of my said wife Ella M. Kolipinski her heirs and assigns. In and upon the trusts nevertheless hereinafter set forth, that is to say: In trust to manage and control the same and to collect all income therefrom arising, and after the payment of all my funeral expenses, all my just debts and the costs of the administration of my estate, including all taxes of any kind, then to use said income of my real estate for the *benefit, support and maintenance of my said wife Ella. M. during her life* and the lives of my children now living and for any children that may hereafter be born to me. Upon the death of my said wife and children said real estate shall descend to their right heirs at law.

"For the purpose of carrying out the full provisions of this my last will, it is my intentions that *my real estate shall be*

*preserved as a whole for the benefit, support and maintenance of my said wife Ella M. and my children during their lives;* but occasions may arise when a part or the whole of my real estate may be sold at a great advantage. I therefore authorize and empower my said trustee to sell any part, or the whole of my said real estate at any time for a sum at not less that two (2) and one (1) half (½) times the then assessed value of my said real estate, and to transfer and convey to the purchaser or purchasers a perfect title. But my said trustee is not authorized to Mortgage any part of my real estate for any purpose

"Should any part of my real estate be sold, it is my will, and I so direct my trustee to immediately invest the money so realized from said sale in other real estate in the District of Columbia, the income therefrom to be used for the same purpose as I have hereinbefore more fully set forth." (Italics supplied.)

By this language, we see the testator (1) devising all his real estate to his wife "absolutely and in fee simple"; (2) creating the trust which directed her to manage and control the real property, to collect all income produced therefrom, to pay funeral expenses, debts, costs of administration, etc.; (3) directing the trustee to use the income of the real estate "for the benefit, support and maintenance of my said wife Ella. M. during her life and the lives of my children now living and for any children that may hereafter be born to me"; and (4) stating his intention that the real estate should be preserved as a whole with the authorization to sell it under stated conditions with the direction to invest money realized from the sale in other District of Columbia real estate.

We hold that this language creates a trust which vests in the wife for her life the use of this trust income. It is not clear what the testator intended in the words "to use said income of my real estate for the benefit, support and maintenance of my said wife Ella. M. during her life and the lives of my children now living and for any children that may hereafter be born to me." There is no uncertainty, however, in the language "to use said income of my real estate for the benefit, support and maintenance of my said wife Ella M. during her life." This language undoubtedly grants the use of the real estate trust income to the wife, during her life. The troublous words are "and the lives of my

children now living and for any children that may hereafter be born to me" which follow, without punctuation, the language creating this clear and specific right in the wife for the use of this income. In our opinion, they grant no present right in the children during the life of the mother. It may well be that the use of this clause was an attempt on the part of the testator to emphasize the fact that his wife was to receive this income for her life even through the lifetime of the children; and that afterborn children (there were none) were to be considered in the same category as those living when he wrote the will. We do not know what the testator intended in the use of this language and we are not helped by other language in the will.

However, there is one primary definite intention shown in his language, namely that he wanted the income from the real estate trust to be used for the benefit, support, and maintenance of his wife during her life. The language creating this interest in the wife is in simple words, clear and distinct. We are unable to conclude that the language thereafter used limits or lessens the definite right of the wife to the use of the income for life. The language used to oppose the finding of the lower court, the provisions in Items 2 and 5, strengthen us in our conclusion. In Item 2, the testator expressed his *"intentions"* that his real estate be preserved as a whole "for the benefit, support and maintenance of my wife Ella. M. and my children during their lives" and again in Item 5, referring to the interest on the personal trust, it "shall be added to the income hereinbefore provided and to be used for the benefit, support and maintenance of my said wife and children." We not only conclude that the foregoing language at the points found in the will creates no interest for the children in the income of the real estate trust while their mother lives, which is the point in issue, but his use of this language in the will indicates that he had a different purpose in the paragraph in which he creates the real estate trust and disposes of the income therefrom.

That testator could easily have inserted words that would vest a present interest in the real estate income in the children and secure to the children the right to share this trust income during the life of the wife admits of no doubt. It would have been an easy matter to have inserted language that would have created this trust to

702

the mother for herself and children as a class. In our opinion, he did not do that either in the language in Item 1 or in other portions of the will.

It is well established that when any interest or estate is created in a will or other instrument in clear and definite language, such interest or estate is not lessened or nullified except by the use of equally clear and definite terms.

"I hold it to be a rule that admits of no exception in the construction of written instruments, that where one interest is given, where one estate is conveyed,— where one benefit is bestowed in one part of an instrument by terms, clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman could entertain a doubt,— in order to reverse that opinion, to which the terms used of themselves and standing alone have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; * * * it is not even sufficient that you should deal in probabilities, but you must show something in another part of that instrument, which is as decisive the one way as the other terms were decisive the other way; and that the interest first given cannot be taken away either by tacitum or by dubium, or by posibile, or even by probabile, but that it must be taken away, and can only be taken away, by expressum et certum." Thornhill v. Hall, 2 Cl. & F. 22, 8 Bligh N.S. 88, 5 Eng.Repr. 879; Hawley v. Grand Rapids Trust Co., 267 Mich. 232, 255 N.W. 196.

"The primary significance of words should ordinarily attach and does attach, unless it is manifest from the will itself that other definitions are intended. Weight and meaning must be given to every word used if they make any sense at all. None are to be deleted and none added, for men make their own wills, nor should we search out obscure or recondite possibilities in simple words. Falstaff's babbling of green fields has sometimes led meticulous critics to untenable conclusions." Rady v. Staiars, 160 Va. 373, 168 S.E. 452; Wallace v. Wallace, 168 Va. 216, 225, 190 S.E. 293.

We repeat, the principal value of the adjudications are their application of the general principles governing the law of wills to the facts of the particular case. Farmers Bank of Clinch Valley v. Kinser,

169 Va. 69, 192 S.E. 745, 747. In Hepburn v. Winthrop, 65 App.D.C. 309, 314, 83 F.2d 566, 571, 105 A.L.R. 310, we recognized this principle, stating, through Mr. Justice Groner, that "it has been aptly said that no will has a twin brother." Precedents help but little in the construction of wills, because no will has a "twin brother" and if a twin brother were found, he, most likely, would not be identic. It is admitted by counsel that "it is safe to say that no will can be found containing language bearing even a close similarity to that used in the Kolipinski will."

It is contended that the principles governing Hepburn v. Winthrop, supra, should control the construction of the will in the present case. This contention is without merit. In that case, there was a testamentary gift in trust for a class, while the will of Dr. Kolipinski involves a testamentary trust set up in favor of his wife. We see none of the continuities present in the Kolipinski will that would show testator's intent to give the income of the trust he created to his wife and children as a class. To enable a gift to be one to a class there must be a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time and who are all to take in certain proportions, the share of each being dependent upon the ultimate number of persons. Hepburn v. Winthrop, supra. Likewise we consider academic the theory urged that the cases involving a sole trustee and a sole beneficiary are either controlling or pertinent to our problem, since this will provides for beneficiaries other than the wife and for a substitution in the trusteeship.

However, we are strongly impressed by the principles enunciated in Whitridge v. Williams, 71 Md. 105, 109, 17 A. 938, 17 Am.St.Rep. 513. In that case the will provided:

"I give and bequeath to John A. Whitridge fifty thousand dollars in cash to be held in trust, the income of which to be paid to Mrs. Mary C. Williams, wife of Dr. Philip C. Williams for the sole use of herself and her children, during the term of her natural life. * * *".

The court said: "The income was to be paid to Mrs. Williams during the period of her natural life. The words, 'for the sole use of herself and her children,' did not give the children any estate in the property bequeathed. They showed that

their support and maintenance were objects for which this testator desired to provide, but the mode which he adopted for securing this result was the gift to her of the income during her life." (Italics supplied.)

It will be seen from the foregoing case that the phrase in it is stronger for the contention that the children take with their mother than the phrase in the case at bar. In it the words of the will were "for the sole use of herself and her children" while in the Kolipinski will the phrase was "and the lives of my children", etc.

In Lewis v. Schafer, 61 App.D.C. 167, 168, 58 F.2d 893; Haller v. Helvering, 63 App.D.C. 35, 68 F.2d 780; Conrad v. Conrad's Ex'r, 123 Va. 711, 717, 97 S.E. 336; and Paisley's Appeal, 70 Pa. 153, 159, the executors of the decedent were charged with active duties in the settlement of the estates, therefore, by implication of law, they became trustees holding the estate in trust burdened by the duty of administering the estate according to the provisions of the will. "For 'where the duties imposed upon the executors are active and render the possession of the estate convenient and reasonably necessary, [they] will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit terms.' Ward v. Ward, 105 N.Y. 68, 11 N.E. 373 [375]." Wilson v. Snow, 228 U.S. 217, 225, 33 S.Ct. 487, 490, 57 L.Ed. 807, affirming 35 App.D.C. 562.[2] Thus, in Lewis v. Schafer, Haller v. Helvering, Conrad v. Conrad's Ex'r, and Paisley's Appeal, all supra, we have, by implication of law, a testamentary gift in the form of a trust to the wife who is to use the income for the maintenance and support of testator's children. These cases, then, by reason of the principles therein contained, became strongly persuasive in their application to Dr. Kolipinski's will.

In Lewis v. Schafer, supra, the will provided [page 894]: "5. The title of my property, No. 923 Louisiana Avenue N. W., I hereby vest in my executrix, [wife] Susie E. Schafer, *to have and to hold during her natural life;* to take possession of same, keep it in good repair and well insured,

pay all taxes, and *the proceeds derived from rent less expenses to be used by her for the maintenance of herself and my children during their minority."* We said: "In our opinion the language of testator's will is plain and unambiguous, and neither requires nor admits of construction according to technical rules. It plainly and unmistakably provides for a life estate in testator's widow as claimed by her. This is all that is involved in this appeal, and is all that we need now decide." (Italics supplied.)

In Haller v. Helvering, supra, the will provided that *"the net profits of the business shall be paid to the widow during her widowhood for the support of herself and the children of the testator"* by the executors. We said that all the widow had "was a right for her unmarried life to the net income as it accrued. * * * *The interest that the children had in the income* for the years in question *was through apportionment by their mother under the will of their father,* and not by a contractual arrangement within the living group." (Italics supplied.)

In Conrad v. Conrad's Ex'r, supra, the will provided: "That the interest on all said investments be collected by my executrix and applied to the *support of herself and our children."* The court said: "In an unbroken line of decisions from Wallace v. Dold's Ex'rs, 30 Va. (3 Leigh) 258, decided in 1831, to Honaker v. Duff, 101 Va. 675, 44 S.E. 900, decided in 1903, it has been held that a gift to a wife *for the benefit of herself and children, or words of like effect, is a gift to the wife,* and that *the children take no interest or estate in the property given,* and are only mentioned to express the motive for the gift to the wife." (Italics supplied.)

In Paisley's Appeal, supra, the testator gave to his wife "The rents and profits of all my property during her life for her support and the support and education of my children under the direction of my executors." The court held: "He gives to his widow, the present appellant, the rents and profits of all his property during her natural life, under the direction of his executors. The object of this devise to her

---

2 This case (Wilson v. Snow, supra) involved the question of the right of survivorship of the executrix as trustee and the title to land under an ancient deed. See, also, Clifford v. Stewart, 95 Me. 38, 49 A. 52, 54; Campbell v. Clough, 71 N.H. 181, 51 A. 668; Brewster v. Mack, 69 N.H. 52, 44 A. 811; Greenland v. Waddell, 116 N.Y. 234, 22 N.E. 367, 15 Am.St.Rep. 400; Mullanny v. Nangle, 212 Ill. 247, 72 N.E. 385, 386.

is expressed to be *'for her support and the support and education of his children.'* * * * However that may be, we think that the words, which expressed the object for which the devise of the entire property was made to the wife for life, meant to repose that discretion in her, *did not vest any present interest in the children as cestuis que trust* of any particular share or shares * * *". (Italics supplied.)

We have in the present case a trust established to provide for the payment of income arising therefrom to the wife during her life. The will of Dr. Kolipinski shows clearly that he intended to give the use of the income from this trust to his wife so that she might manage and control it in order to provide support for herself and children. Of course, it was his intention that· his children, ranging in age from 7 years to 7 months, were to be supported and to further this wish he availed himself of a most natural method, giving the income to his wife during her life so that his children might be maintained by her. We think that the followng cases, which contain testamentary gifts and not trusts, are helpful to our decision. In these cases it was sought to burden the gift devised or bequeathed to the wife with a trust in favor of the children because of the fact that the testator mentioned that the gift was given to the wife for the support and maintenance of his children. It was held in each instance that the intent of the testator was to give absolutely to the wife, the qualifying clause merely showing the motive of the testator in making the gift. Jackson v. Jackson, 13 Allen, Mass., 116; Lloyd v. Lloyd, 173 Mass. 97, 53 N.E. 148; Heppenstall's Estate, 144 Pa. 259, 22 A. 860. It will also be noted in connection with these cases that the phrase construed was in each case stronger than the indefinite phrase in the Kolipinski will, i. e., "and the lives, etc."

Where there is ambiguity in the language of the will, then, under the rule laid down in Smith v. Bell, supra, and Blake v. Hawkins, 98 U.S. 315, 324, 25 L.Ed. 139, the interpreter may put himself in the place of the testator at the time he made the will and use the circumstances surrounding testator to assist in arriving at the real intent. With this in mind, we will see where the circumstances lead us. Testator had accumulated considerable estate, most of which was in income producing real estate. He managed his property and had instructed his wife in the management thereof. He believed in real estate investments. He believed in the future of his properties. None was to be sold unless a price two and one-half times the assessed value could be secured and then the proceeds were to be reinvested in Washington real estate. He intended to preserve his real estate as a whole.· When he made his will the oldest child was 7 years and the youngest 7 months. As a business man he knew the difficulties and expense that would follow his creating a present estate in the infants. Guardians might serve 14 to 20 years to receive any monies payable to the children. So he set up a trust consisting of all his real estate and directed that the income be paid to his wife, to be used by her for the support of herself and children. We can find no stronger language respecting the choice made by the testator under similar circumstances than that in Tyack v. Berkeley, 100 Va. 296, 304, 40 S.E. 904, 907, 93 Am.St. Rep. 963, in which the court observed:

"The wit of man has not as yet discovered a safer repository than the mother for the rights and interests of children. Under the stress of some great emergency she may sacrifice the apparent and immediate interest of the child, but even in such a case a full knowledge of the surrounding facts and circumstances might go far to vindicate the propriety and wisdom of her conduct. As a rule, her love and spirit of self-abnegation, where her children are concerned, may be trusted to do what is wisest and best to conserve and promote their interests; and if we are to choose between the peril of defeating the provision for the family by adhering to that line of decisions which vests the entire interest in the mother and its destruction by subdivisions, which would surely follow the vesting of the interest jointly in the mother and children, we must abide by the course of decision which has prevailed in this state for nearly three-quarters of a century."

Those opposing the position taken by the lower court contend that the testator was 19 years older than his wife when he made the will and that it was reasonable for him to contemplate, should he predecease her, that his widow would remarry and that thereafter he would not desire her to receive the income of the real estate trust. Certainly testator considered that his wife might remarry. Definitely did he speak upon this subject in authorizing the

appointment of a substitute trustee in event of her remarriage. But there is no intimation in the will that the income to her should cease upon her remarriage. However, should she remarry, testator authorized the appointment of a substitute trustee which would relieve against the supposed influence of the then husband in respect of the management and control of the real estate trust. That was the extent to which his will was affected by her remarriage. Certainly testator remembered that though remarried, Ella M. Kolipinski remained the mother of his children born to her. Testator had confidence in her managerial abilities; and confidence that she would care for the children born to their union. The record completely justifies this confidence. So, we conclude that the circumstances surrounding testator would lead the interpreter to the conclusion that he intended the wife to receive for her life the income of the real estate trust.

As a matter of fact, the children themselves for many years raised no question that their mother was not entitled to the net income of the real estate trust. One of them even now, an unmarried son, living with his mother, answers in this cause that at all times he has been satisfied in respect of the management of the trust property, the disbursement and distribution of the net income thereof and would desire his mother, if his will could prevail, to continue in the management of said property and distribution of its income. The three daughters, Emilie, Henrietta and Eleanore arrived at their majority in 1924, 1925 and 1926 respectively. They did not claim any definite interest adverse to the mother during her life in the income of the real estate trust until the middle of 1935, some 11, 10 and 9 years respectively, after they reached their majority. We do not hold that such inaction bears directly upon a judicial determination of the intent of the testator expressed in the will, but mention it merely as a significant circumstance indicating their own construction of their father's intent for many years after reaching their majority.

(2) The testator bequeathed the sum of $12,000 from his personal estate to be held in trust for his sister Emilie Weiss during her lifetime. Upon her death the trust fund reverted to his estate.

The lower court held that upon the death of the sister such fund became a part of the residuary estate and, under the express terms of the will, was bequeathed to the wife absolutely. We agree with such holding.

(3) In Item 5 of the will, the testator bequeathed personal property to his wife, in trust, with which to settle any claims that might arise against her as trustee in the management and protection of the real estate, which fund amounted to $19,120 when the wife ceased to be trustee. The lower court held that this sum became a part of the real estate trust. In this we think he erred. Item 5 of the will is as follows:

"In the event, that the total value of my personal estate, consisting of either money, bonds, or other securities, shall equal the sum of Ten thousand dollars ($10,000.00) or more; I then give and bequeath the same to my wife Ella M. in trust to hold as a fund with which to settle and satisfy any and all claims, demands, suits or damages that may arise against my said wife as trustee in the management and protection of my said real estate; Provided that said trust fund shall not exceed the sum of Twenty thousand dollars ($20,000.00). Said trust fund shall be kept on deposit in one or more Banking institutions at interest, which interest shall be added to the income hereinbefore provided and to be used for the benefit, support and maintenance of my said wife and children."

This language must be given its ordinary meaning. It is precise, plain, and unambiguous. It creates a trust personal to the wife. It specifies the purpose and use which the wife as trustee is to make of the fund. It says that it is to be used "to settle * * * claims * * * against my said wife as trustee in the management and protection of my said real estate." As is unambiguous in itself it "neither requires nor admits of construction according to technical rules." Lewis v. Schafer, supra, and therefore it must be held to show the intent of the testator unless other language in the will definitely contradicts it. We find no such language in the will.

It is urged that as the will contained provisions for the continuance of the real estate trust after the termination of the wife's trusteeship, and the substitution of trustees to continue it, that it was the testator's intention to have this second trust continue for the benefit of the substituted trustees. The answer to that argument is that the testator by one instrument created two essentially different trusts, a real

estate and a personal trust. The corpus of the real estate trust was "all the real estate" of the testator; no personal property in it. The corpus of the personal trust was personal property; no real estate in it. Each was independent of the other and complete within itself, except that in the personal trust the interest on the fund was to be added to the income derived from the real estate trust to be used for the benefit, support and maintenance of the wife and children.

Unless the personal trust failed when the wife ceased to be trustee, why was it separately carved out by the testator in his will? Certainly, if the construction of the lower court be maintained and this trust fund be added to the real estate trust, there was no reason for the creation of the personal trust. To the day that the wife ceased to be trustee, the interest from the personal trust was added to the income of the real estate trust for her use during her lifetime. If, as construed by the court below, upon the cessation of her trusteeship, the corpus of that trust should be added to the real estate trust then she would immediately receive the income from the original real estate trust, plus the interest from the personal trust fund. If that had been the intention of the testator, we submit that the language used in setting up the personal trust is unnecessary and meaningless.

It is said that the personal trust was created to protect the real estate of the testator. We suggest that the real estate would have been as well protected if the trust in Item 1 of the will had been composed of "all the real estate" of the testator, and "all the money, bonds, or other securities" that went into the personal trust. We observe that the testator could very easily have put the personal property in the trust created in Item 1, and no doubt would have done so had he intended it. As the language in question is free from ambiguity, we are not permitted to construe it and thereby substitute an entirely different meaning from the language as set forth in the will. Travers v. Reinhardt, 25 App. D.C. 567, affirmed 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865; Mayo v. Whedon, 47 App.D.C. 138; Rady v. Staiars, supra; Wallace v. Wallace, supra. It is not for us to determine that the testator would have written differently upon this point had his attention been called to the suggested change. Justice Holmes in Eaton v. Brown, 193 U.S. 411, 413, 24 S.Ct. 487, 48 L.Ed. 730, used very apt language in respect of interpreting a will when he said:

"There is no doubt either of the danger in going beyond the literal and grammatical meaning of the words. The English courts are especially and wisely careful not to substitute a lively imagination of what a testatrix would have said if her attention had been directed to a particular point for what she has said in fact. On the other hand, to a certain extent, not to be exactly defined, but depending on judgment and tact, the primary import of isolated words may be held to be modified and controlled by the dominant intention, to be gathered from the instrument as a whole."

It is urged that the primary interest in the testator's mind was to create the real estate trust and to protect it for the use of his wife and family. We have no doubt that this purpose was strong in the mind of the testator, but we do not view it as a primary interest or such dominant intention as would permit the changing of unambiguous language in the will. We find an equally strong purpose in his will to have his personal property eventually find its way to the wife. He set up a trust fund of personal property for his sister, which, upon her death, goes to the wife. He set up a trust fund out of personalty that, when the trust fails, goes to his wife. We see his wife made the legatee of his residuary estate which consists in its entirety of personal property. Thus all of his personalty eventually finds its way to the wife, burdened enroute with the support of his sister and the protection of the real estate while his wife was in control and managing it. When her control and management of the property ceased, as we read the will, the personal trust fund is no longer charged with the payment of claims, demands, suits, etc., that might be presented against the trustees who were then managing and controlling the property. We can find in this will no such dominant intention in the management and protection of the real estate that would permit of our changing the precise, clear, and unambiguous language, necessary to give it the construction of the lower court. It, therefore, is our opinion that the testator created in Item five a trust personal to his wife in her capacity as trustee under the will and that when she ceased to be trus-

**707**

tee this trust failed, became a part of the residue of the estate and passed to his wife as such.

■ (4)a. This item involves $3,444 expended by Mrs. Ockershausen while trustee in purchasing and installing 24 General Electric refrigerators in the Royalton Apartments. She used money obtained by the sale of real estate. As shown by her testimony, it was necessary to so equip these apartments to rent them and that the refrigerators were installed with the intent that they were to become a part of the real estate. We think that the refrigerators, when installed in the apartments with such intent, became fixtures; that they are properly a part of the real estate; and, therefore, part of the real estate trust. The "intent and conduct" of Mrs. Ockershausen "under the circumstances of this case are conclusive". Hill v. Farmers' & M. National Bank, 97 U.S. 450, 453, 24 L.Ed. 1051.

The duties of the trustee under the will are plainly outlined. She was to manage and control the real estate trust. In her management of this trust it was her duty to see that tenants occupied the apartments, for without occupation by income-producing tenants revenues would fail. It was her duty to make the apartments habitable and equipped with the usual modern appliances of like apartments. She had the duty to meet competition with other apartment houses else the income therefrom would fail. Failing to keep pace with present day conditions she, as life beneficiary, would thus proportionately have her income diminished, and equally the remaindermen would have their reversion dissipated in the same manner. "Electric refrigerators are now recognized as just as essential equipment as gas or electric ranges in modern apartment buildings, * * *". Guardian Life Ins. Co. v. Swanson, 286 Ill.App. 278, 288, 3 N.E.2d 324, 329.

The case at bar presents a different question than is usually presented where fixtures are involved such as the title to the property between mortgagor and mortgagee, landlord and tenant, etc. Here is the installation of modern equipment by the life beneficiary trustee, essential to the proper management and control of the trust for the very purpose of maintaining the trust. The sole question involved is whether the original cost is properly chargeable against the corpus of the real estate trust, or chargeable against the income therefrom. We think the fact that they are fixtures, shown by the intent with which they were installed and the necessity for their installation to the proper management of the trust, answers the question of their proper allocation; that it is a corpus expenditure and properly chargeable to corpus, as the lower court decided. Hill v. Fill, 61 App.D.C. 72, 74, 57 F.2d 438.

■ b. The lower court held that the tax upon the capital gain from the sale of the Pennsylvania Avenue property was chargeable to income.

The pertinent provision of the will is:

"To collect all income therefrom arising, and after the payment of all my funeral expenses, all my just debts and the costs of the administration of my estate, including *all taxes of any kind,* * * *".

There was no capital gains tax at the time testator wrote his will, but when he used this language, in our opinion, he had in mind any general tax or an exaction "paid to the state as a state, the consideration of which is protection by the state." Illinois Central Railroad Co. v. Decatur, 147 U.S. 190, 197, 198, 199, 13 S.Ct. 293, 37 L.Ed. 132. The capital gains tax is that kind of tax. We have examined with care the numerous cases which counsel have cited to show that error was committed in so charging to income. We find that these cases were brought to collect Federal income taxes; arose under a particular statute; or do not contain similar language found in the present will, hence they are of little aid in the construction of the provisions of testator's will.

Undoubtedly the general rule, in the absence of controlling language in the will, would properly allocate such payment to corpus, but we do not have that character of case here. The pertinent language of the will shows the testator burdened the income of the real estate trust, which his wife took as life beneficiary, with the payment of all taxes, which, if not paid from income, would reduce the real estate trust itself. In addition to the language quoted above, he provided that his "real estate shall be preserved as a whole", and that the $20,000 trust fund was to be held "as a fund, with which to settle and satisfy any and all claims," etc., that might arise against his wife as trustee. Also, he had in mind probable enhancement of his real estate holdings. He provided for a sale

only when the selling price should equal a sum two and one-half times the "then assessed value" of the real estate—directing immediate reinvestment in Washington real estate—and forbade the mortgage of any part of the real estate. In short, the whole tenor of the will shows that he desired to provide for his young family by creating a real estate trust that would never be diminished in value by taxes; and that the original trust with its accretions should have its net income used by the wife for herself and children upon condition that *"all taxes of any kind"* be paid from its income. We agree in the conclusion of the court below. (Italics supplied.)

■■■ c. We are not in agreement with the court below that the special assessments amounting to $1,846.56 are properly chargeable to income. While a special assessment is a charge against the property collected by a sovereign or a governmental agency, they are in a different category from the "taxes" testator had in mind. In Illinois Central Railroad v. Decatur, supra, the Supreme Court very pointedly differentiated between taxes paid "to the state as a state, the consideration of which is protection by the state" and "special assessments, which are imposed upon property * * * for the payment for a local improvement, supposed to enhance the value of all property." In that case the act which incorporated the Company exempted it from taxation. The city of Decatur assessed two parcels of land belonging to the Company $262.70 for the purpose of defraying the cost of grading and paving a certain street in that city. The company objected to this assessment on the ground that by its charter it was exempted from all taxation of every kind except as therein provided for, and that there was no provision permitting such an assessment. In deciding against the company's contention, the court said: "special assessments * * * proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement [cases]", and further "an exemption from taxation is to be taken as an exemption simply from the burden of ordinary taxes, taxes proper, and does not relieve from the obligation to pay special assessments." See, also, Plympton v. Boston Dispensary, 106 Mass. 544; Chambers v. Chambers, 20 R.I. 370, 39 A. 243; Chamberlin v. Gleason, 163 N.Y. 214, 57 N.E. 487; In re Estate of

Ardrey, 232 N.Y. 109, 133 N.E. 369; Rhode Island Hospital Trust Co. v. Babbitt, 22 R.I. 113, 46 A. 403; Sheffield v. Cooke, 39 R.I. 217, 98 A. 161, Ann.Cas. 1918E, 961; Restatement of the Law of Trusts, sec. 233(k).

■■■ (5) The action of the lower court in failing to decree that Mrs. Ockershausen was liable to corpus in the sum of $124,-560.13 as a depreciation reserve is assigned as error by the guardian ad litem for the Smith infants, remaindermen. This error is not assigned by other parties to the cause.

"It is a rule of general application that the beneficiary of a trust entitled thereunder to receive the income from such property may not be required to suffer a deduction from such income for the creation of a sinking fund to provide for depreciation and obsolescence, unless, indeed, the trust instrument or the law of the state makes provision therefor." Laflin v. Commissioner of Internal Revenue, 7 Cir., 69 F.2d 460, 461.

It is the general law of trusts "to forbid deductions from distributable income on account of depreciation, and to place upon the remaindermen the burden of any shrinkage of capital value of that nature." Freuler v. Helvering, 291 U.S. 35, 43, 54 S.Ct. 308, 311, 78 L.Ed. 634. See, also, Commissioner v. Freuler, 9 Cir., 62 F.2d 733; Whitcomb v. Blair, 58 App.D.C. 104, 25 F.2d 528; Burnet v. Whitcomb, 62 App. D.C. 170, 65 F.2d 803, and Id., 62 App.D.C. 176, 65 F.2d 809.

There is no language in the will, no statute, nor court decision in this jurisdiction authorizing or directing the trustee to set up such a reserve. So there is no "duty * * * to set apart a sinking fund to provide for depreciation." Laflin v. Commissioner, supra. Thus depreciation of the real estate trust involved herein will be borne by the remaindermen, as decided by the court below.

■■■ (6) In the cause below David F. Smith, Esq., represented his wife, Eleanore Kolipinski Smith, as counsel, and was the duly appointed guardian ad litem of their infant children. He was discharged as counsel for Mrs. Smith, and later, again engaged as her counsel. He alleges that Mrs. Smith, at the second employment, gave him an attorney's lien upon the cause of action, and alleged that it was thereupon agreed that his compensation would

be 15 per cent of all sums that would accrue to her out of the income of the trust estate if there should be a reversal by this court. Mrs. Smith discharged him as counsel the second time, which was permitted by the lower court in the following order:

"Ordered, that David F. Smith, Esq., be, and he hereby is, removed as counsel appearing on behalf of Eleanore Kolipinski Smith in further proceedings herein; and it is further

"Ordered, that Leonard J. Ganse, Esq., be, and he hereby is, substituted as counsel to appear on behalf of said Eleanore Kolipinski Smith in further proceedings in this cause, reserving however, for further determination, upon the issues made by said petition of Eleanore Kolipinski Smith, the answer of David F. Smith, Esq., to said petition, and the counter-affidavits of said Eleanore Kolipinski and Leonard J. Ganse made in reply to said answer, all questions concerning the contingent fee contract and equitable lien asserted by said David F. Smith, Esq., to exist in his behalf herein; and it is further,

"Ordered that David F. Smith, Esq., may take such further steps herein, and on an appeal to the United States Court of Appeals for the District of Columbia, for the protection and establishing of his asserted contingent fee contract and equitable lien as to him may be deemed advisable and necessary in respect thereof, provided however that said further proceedings and appeal to be so taken shall be at the instance and on the sole cost and expense of said David F. Smith, Esq., and not otherwise."

He has now availed himself of the provisions of this order and appeals therefrom.

It is settled law that a client, with an order of court, has the right to discharge an attorney, with or without cause. In re Paschal, 10 Wall. 483, 19 L.Ed. 992; The Flush, 2 Cir., 277 F. 25; United States v. McMurtry, D.C., 24 F.2d 145. We have held that an attorney dismissed without charge of misconduct will be protected by the court when it grants leave to substitute another attorney; that an attorney under a contingent fee contract is vested with an interest in the cause of action which entitled him to intervene in the suit to protect it; and that he may appear in the cause on appeal to protect his interest. Kellogg v. Winchell, 51 App.D.C. 17, 273 F. 745, 16 A.L.R. 1159.

Therefore, there was no error in the foregoing order. Mrs. Smith had the right to dismiss him as her counsel with permission of court. It was proper under the Kellogg Case, supra, that the courts protect his rights relative to possible compensation under his alleged contract. The order reserves "for further determination" all questions in issue in court below, relative to the contingent fee contract and equitable lien asserted, hence we express no opinion thereon. Costs in No. 7065 will be paid by David F. Smith.

We have examined and carefully considered the other assignments of error, but find them to be without merit.

. The decrees of the lower court are affirmed in Nos. 7062, 7064, and 7065. The decree in No. 7063 is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent herewith.

MILLER, Associate Justice (dissenting in part).

I concur except as to points 1 and 3 of the majority opinion.

The testator created a testamentary trust as to his real property.[1] The only question for us to determine therefore is, Who were intended to be cestuis or beneficiaries thereunder? The majority opinion says " * * * the will of Dr. Kolipinski involves a testamentary trust set up in favor of his wife. We see none of the continuities present in the Kolipinski will that would show testator's intent to give the income of the trust he created to his wife and children as a class." Standing

---

[1] Restatement, Trusts, 1935, § 127, Comment c: "Where property is transferred to a member of a class for the benefit of himself and other members of the class, as for example where it is transferred to a person for the benefit of himself and his children or his family, it is a question of interpretation whether the transferor manifests an intention to create a trust or to make a beneficial gift to the transferee with an expression of the motive for making such a gift (see § 25, Comment d).

* * * * * *

"So also, if a trust is created by the terms of which the trustee is directed to apply the trust property for the support of a woman and her children, both she and her children are beneficiaries of the trust."

alone this seems to mean that the widow was the sole beneficiary. Moreover, the same theory is suggested by cases relied upon to support the conclusion, i. e., cases construing wills which made testamentary gifts or absolute bequests of property,[2] and in which the theory of a trust was rejected. If this is the theory of the majority opinion then it cannot stand under the circumstances of the present case, because the widow, being the sole trustee, could not also be the sole beneficiary,[3] and the trust would fail. It must be remembered that a trust is not a gift.[4] Although the fact situations may be similar in the two cases, the difference between them is just as fundamental as the difference between a deed and a mortgage. The fiduciary relationship which exists between trustee and beneficiary, and which is of the essence in a trust, is absent in the case of a gift. Hence, in the present case, unless we deny the existence of a trust, the practice of reading the language of the will to discover the testator's motive in making a gift has no application,[5] and it accomplishes nothing to speak of a "gift in the form of a trust."

While it is possible therefore—when other circumstances permit—to spell out a trust from the fact that executors are charged with active duties in the settlement of estates, it is not possible to do so when the result would be a trust in which the sole trustee is also the sole beneficiary. In the latter situation the cases properly hold that no trust exists, but instead that a gift is made. Where, however, a trust is expressly declared, it becomes necessary to read the will in a manner consistent with a trust. Under the circumstances of the present case this requires that the gift theory be rejected and the cases relied on by the majority rejected as inapplicable.

The majority opinion also says " * * this will provides for beneficiaries other than the wife * * *." It does not name those beneficiaries or define their interests. But it is obvious that none other than the children, born and unborn, could qualify, and presumably the statement means that their beneficial interests are in the income of the real property after the death of their mother. If this is the theory of the majority opinion then the vital

---

[2] Thompson v. Maxwell Land Grant & Ry. Co., 168 U.S. 451, 18 S.Ct. 121, 42 L.Ed. 539; Lewis v. Schafer, 61 App. D.C. 167, 58 F.2d 893; Haller v. Helvering, 63 App.D.C. 35, 68 F.2d 780; Paisley's Appeal, 70 Pa. 153; Conrad v. Conrad's Executor, 123 Va. 711, 97 S.E. 336; Jackson v. Jackson, 13 Allen, Mass., 116; Lloyd v. Lloyd, 173 Mass. 97, 53 N.E. 148; Estate of Heppenstall, 144 Pa. 259, 22 A. 860.

[3] Restatement, Trusts, 1935, § 115(5). For this reason Whitridge v. Williams, 71 Md. 105, 17 A. 938, 17 Am.St.Rep. 513, is not analogous. See Willey v. W. J. Hoggson Corp., 90 Fla. 343, 354, 106 So. 408, 412; Town of Cascade v. County of Cascade, 75 Mont. 304, 309, 243 P. 806, 808; Julian v. Northwestern Trust Co., 192 Minn. 136, 138, 139, 255 N.W. 622, 623, 624; Weeks v. Frankel, 197 N.Y. 304, 310–314, 90 N.E. 969, 971–973; Wilson v. Harrold, 288 Ill. 388, 123 N.E. 563; McIntyre v. Smith, 154 Md. 660, 671, 141 A. 405, 410.

[4] Restatement, Trusts, 1935, § 25, Comment d: "If property is transferred to a person for the benefit of himself and his family, it is a question of interpretation whether the transferor manifests an intention to create a trust, or manifests an intention to make a beneficial gift to the transferee with an expression of the motive for making such a gift (see § 127, Comment e).

"Illustrations:

"7. A bequeaths $100,000 to his brothers and sisters 'for the benefit of themselves and their respective families.' In the absence of other evidence, the brothers and sisters are entitled beneficially to the property and do not take it in trust.

"8. A bequeaths $10,000 to B in trust for the support of B and his wife. In the absence of evidence of a contrary intention, a trust is created."

See Conner v. Everhart, 160 Va. 544, 549, 550, 169 S.E. 857, 859.

[5] Even where the testator bequeaths his property to his wife for the support of herself and her children, without the establishment of a trust, it has been held in this jurisdiction that the gift is coupled with a trust which can be enforced by the children. Thus, in Wilson v. Snow, 35 App.D.C. 562, 563, affirmed, 228 U.S. 217, 33 S.Ct. 487, 57 L.Ed. 807, the following bequest was held to create a life estate in the wife coupled with a trust in favor of the children: "I give and devise to my dearly beloved wife, Adelaide Wilson, all my real and personal property during her single life, for the education and support of herself and my children hereinafter named, and in case of the marriage of my said wife, then she shall forfeit all claim, interest, and estate hereby devised to her * * *." See, also, 1 Perry, Trusts and Trustees, 7th Ed. 1929, § 117.

question is merely whether the children, born and unborn (this uncertainty was determined after the death of testator), were intended to share as beneficiaries with the mother during her lifetime or only after her death. In my opinion, the former was the intention of the testator. There is nothing in the language of the will to suggest the latter alternative.

The widow in the present case was executrix, trustee, and one of the beneficiaries. If testator's intention had been to make a gift of the income of his real property to her alone, the elaborate trust provisions of the will would have been unnecessary. The simple expedient of an outright gift or the vesting in her of a life estate would have been sufficient. It seems obvious that he must, then, have had some other intent and purpose; and that, in my opinion, was the protection and care of his children, especially in the event of remarriage by his wife. For this purpose a trust, naming them as beneficiaries, provided the ideal instrument. Consequently, the only reasonable answer to the question stated above is that the testator intended the income to be used for the benefit of the widow and children as a class and that both should be beneficiaries.

The language of the will, in my opinion, supports that conclusion. The language of Item 1 standing alone is obviously ambiguous. It reads as follows:

"* * * In trust to manage and control the same and to collect all income therefrom arising, and after the payment of all my funeral expenses, all my just debts * * * then to use said income of my real estate *for* the benefit, support and maintenance of my said wife Ella. M. during her life and the lives of my children now living and *for* any children that may hereafter be borne to me." (Italics supplied.)

Read literally, this means "for the benefit et cetera of my said wife Ella M. during her life and thereafter, for her benefit during the lives of my children now living." This is susceptible of the interpretation that testator intended the income to be used following her death for maintaining a memorial, or for other like purposes. But no one contends for such a literal reading of the language. Ambiguity being present it becomes necessary to apply the well recognized rule that a will is not to be construed by isolated expressions, but must be construed in its entirety.[6] With the application of that rule in mind, my analysis of the other pertinent provisions of the will is as follows:

First, the testator used the word *for* twice as indicated by italics; the second time with respect to unborn children. There can be no doubt that he intended by the second use of the word *for* to provide for the benefit, support and maintenance of unborn children. There is no reason to assume that he intended to make different provision for born and unborn children. Putting this fact together with the ambiguous preceding statement in which he spoke of his wife and his children now living, it seems to me that what he intended to say was "for the benefit et cetera of my said wife during her life; for the benefit et cetera of my children now living during their lives; and for the benefit et cetera of any children that may hereafter be borne to me during their lives."

Second, in the next succeeding item of the will the testator clearly expresses his intention as follows: "For the purpose of carrying out the full provisions of this my last will, *it is my intentions* that my real estate shall be preserved as a whole *for the benefit, support and maintenance of my said wife Ella M. and my children during their lives.*" (Italics supplied.) The meaning of this statement is unmistakable.[7] In language similar to that of the preceding item, he thus removed the ambiguity thereof and clearly revealed his intent. Apparently his lack of familiarity with legal language and his attempt to incorporate the words "during her life and the lives of my children now living" produced the inept and ambiguous result in the first item which now requires interpretation. But

---

6 "No rule is better settled, than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole." Marshall, Ch. J., in Smith v. Bell, 6 Pet. 68, 76, 8 L.Ed. 322. See, also, De Vaughn v. De Vaughn, 3 App.D.C. 50, affirmed De Vaughn v. Hutchinson, 165 U.S. 566, 17

S.Ct. 461, 41 L.Ed. 827; Gibson v. Gibson, 53 App.D.C. 380, 384, 292 F. 657, 661, and cases there cited.

7 See Wilson v. Wilson, 119 N.C. 588, 26 S.E. 155; Talley v. Ferguson, 64 W. Va. 328, 62 S.E. 456, 17 L.R.A.,N.S., 1215; Woodruff v. Woodruff, 54 App. Div. 414, 66 N.Y.S. 936.

in the second item he was more successful and produced a result which requires no interpretation.

Third, in Item 5 of the will, provision is made for a trust fund to insure the trustee, in the management and protection of the real estate. The last sentence of the item reads "Said trust fund shall be kept on deposit in one or more Banking institutions at interest, which interest *shall be added to the income hereinbefore provided and to be used for the benefit, support and maintenance of my said wife and children.*" (Italics supplied.) Here again we have repeated the phrase which appeared in Item 1—again without the confusion caused by the interpolation of "during her life and the lives of my children now living"—and again it is apparent that he intended the "income hereinbefore provided" in Item 1 "to be used for the benefit, support and maintenance of my said wife and children," concurrently.

Fourth, in Item 7 of the will the testator provided:

"* * * *Should my said wife Ella M. Kolipinski marry* at any time after my death; or during the minority of either of my two oldest living children; *or should my said wife die;* then, in either event I hereby authorize, direct and empower any of my said children, to institute proceedings in the courts of the District of Columbia for the appointment of a competent trustee, in the place and stead of my said wife, who shall act as said trustee until such time as my two oldest living children shall arrive at their majority, then said substituted trustee shall thereupon surrender his said trust to and in favor of my two oldest living children, *who are hereby appointed trustees with the same authority and power, as herein given and granted unto my said wife,* or to the substituted trustee appointed in her place and stead." (Italics supplied.)

There can be no question that such power and authority as the widow possessed over the real property trust and over its income, she possessed as trustee, and not as the recipient of a gift, for Item 1 clearly so provided. By Item 7 the testator provided for the transfer of all such power and authority, first to a substituted trustee, and thereafter to the children, upon the transfer of trusteeship. This provision of the will, read in connection with the rest of it, again reveals the testator's intention. The first alternative situation under which such transfer was to occur was the death of the wife. The second alternative was her remarriage. So far as control of his estate was concerned, the two situations were practically the same in the mind of the testator. In either event he thought that it would become necessary for a substituted trustee or for the children to take charge, for their own protection as well as the protection of the estate, presumably in order to prevent spoliation of the estate, by removing management from the possibly malign influence of a stepfather, a purpose which would be defeated if the trustees were required to turn over to the uncontrolled influence of the same stepfather the whole income therefrom. Consequently, in my opinion, a reading of the whole instrument clearly reveals the testator's intention to provide a special safeguard for the welfare of his children by making them, equally with his wife, beneficiaries under the trust, and by providing that in the event of her remarriage she should forfeit the trusteeship. The first and great rule in the interpretation of wills is the ascertainment of the intent of the testator.[8]

Smith v. Bell, 6 Pet. 68, 76, 8 L.Ed. 322; Adams v. Cowen, 177 U.S. 471, 20 S.Ct. 668, 44 L.Ed. 851; Washington Loan & Trust Co. v. Hammond, 51 App. D.C. 260, 278 F. 569; Earnshaw v. Daly, 1 App.D.C. 218; De Vaughn v. De Vaughn, 3 App.D.C. 50, 53, affirmed De Vaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827; Holcomb v. Wright, 5 App.D.C. 76, 83, appeal dismissed 163 U.S. 689, 16 S.Ct. 1202, 41 L.Ed. 314; Baldwin v. National Savings & Trust Co., 65 App.D.C. 174, 176, 81 F. 2d 901, 903, certiorari denied, 298 U. S. 670, 56 S.Ct. 835, 80 L.Ed. 1393; Jewell v. Graham, 57 App.D.C. 391, 393, 24 F.2d 257, 259, certiorari denied 277 U. S. 596, 48 S.Ct. 559, 72 L.Ed. 1006. Walker v. Thomas, 64 App.D.C. 148, 150, 75 F.2d 667, 669, 99 A.L.R. 713: "* * * where the intention is apparent, it should be given effect—and this is true— even though to do so involves the rejection of the literal meaning of particular words." See, also, Masterson v. Townshend, 123 N.Y. 458, 462, 25 N.E. 928, 929, 10 L.R.A. 816: "In the construction of a testamentary disposition, where the language is unskillful or inaccurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent, subject only to the proviso that no rule of law is thereby violated."

I think that no helpful conclusion can be drawn from the failure of the children to claim any definite interest adverse to the mother until after the middle of 1935. The record reveals that the mother concealed from the children the fact of their interest; that one of them, at least, asked her for a copy of the will, which she refused; that their curiosity was aroused when in 1930 the mother instructed them to sign certain documents as *trustees;* that in 1932 for the first time the children learned the contents of the will, *when they procured a copy thereof from the Register of Wills;* that in 1933 and 1934 an accounting was demanded from the mother; and that in 1935 they took over the trusteeship.

I am also unable to agree with the conclusion of the majority concerning the $20,000 trust fund. I can find no language in the will, and no authority, to support the conclusion that the trust failed as to this fund when the wife ceased to be trustee. The express language of the will directs that it shall continue, and that the interest therefrom shall be used for the benefit of the wife and children.

The vital language of Item 5 reads as follows:

" * * * I then give and bequeath the same to my wife Ella M. in trust to hold as a fund, with which to settle and satisfy any and all claims, demands, suits or damages that may arise against my said wife *as trustee in the management and protection of my said real estate; * * *."* (Italics supplied.)

In my opinion the testator's primary interest, as set out in the quoted language, and as revealed in the rest of the will, was the management and protection of his real estate, not the protection of his wife, particularly in case she remarried. He was as much interested in the good management and protection of his real estate if and when his children became trustees as when his wife acted in that capacity. If any claims, demands, suits or damages arose against his real estate which could not be otherwise satisfied, it would become necessary to sacrifice the real estate by forced sale and thus defeat his major purpose. For that reason he provided a special fund, not for the protection of his wife but of his wife *as trustee.* If his wife should cease to be trustee, the need for protection of the estate and its good management would be just as great. A forced sale of his real estate while in the hands of the

children or a substituted trustee would destroy the estate and defeat his major purpose. Therefore, he provided that upon transfer of trusteeship, the new trustees should have the same authority and power as the wife while she was trustee. This clearly contemplated that they should have power and authority over the $20,000 trust fund to use it to "settle and satisfy any and all claims, demands, suits or damages that may arise against my said (wife as) trustee[s] in the management and protection of my said real estate." To give to the wife and a stepfather control over the $20,000 fund which he provided for the purpose of protecting his real property— thus diverting it from its major purpose— would defeat rather than carry out that purpose. It would be just as logical to contend that the real estate trust failed when the wife ceased to be trustee. The language used in the creation of that trust bequeathed the real property to the wife "absolutely and in fee simple * * * to the use of my said wife * * * her heirs and assigns;" but the condition of the trust revealed a different intent. So, in the case of the $20,000 trust, the conditions thereof clearly revealed a major purpose to protect the real property and his intent that the $20,000 trust should be used for that purpose.

It will be observed further that Item 7 of the will, in which provision is made for a substituted trustee, and in which the two oldest children "are hereby appointed trustees with the same authority and power, as herein given and granted unto my said wife * * *", does not in any way limit the transfer of trusteeship of the real property trust. A rereading of Item 7, with this point in mind, will immediately suggest that it would be just as logical—or illogical—to limit its operation to the $20,000 trust. It is obvious, however, that the intent of the testator was to effect a complete transfer of trusteeship as to both trusts "with the same authority and power" as granted to the wife.

Moreover, as negative evidence of the testator's intent that the $20,000 trust should continue, reference is made to Item 4 of the will creating a trust in favor of testator's sister. In that item is a provision for termination of the trust, i. e., " * * * upon her death said principal sum and any income that may be due my said sister shall revert to my estate." It is apparent that if testator had wished to provide for the ter-

mination of the $20,000 fund upon the transfer of trusteeship he knew just the words necessary to accomplish that result. It is significant that he did not use them.[9]

---

[9] See, also, Restatement, Trusts, 1935, § 101: "Except as otherwise provided by the terms of the trust, if a trust has been created the trust will not fail when the person designated as trustee ceases for any reason to be trustee."